# Richmond.

## GOOD AND OTHERS V. BOARD OF SUPERVISORS OF AUGUSTA COUNTY.

### November 13, 1924.

1. COUNTIES—*Contracts Entered into by Board of Supervisors—Injunction at Instance of Taxpayer.*—In the absence of fraud a taxpayer cannot, by injunction, question the amount of the consideration of a contract, otherwise valid, entered into by the board of supervisors of a county.

2. STATUTES—*Codification—Mere Changes in Phraseology.*—Mere changes in the phraseology of an act carried into a general revision of the statutes does not of itself indicate any intention to change the meaning of the statute, and this is especially true of the revision of 1919, if there is no revisors' note indicating a material alteration, for it is said in the preface to the Code, page xi: "The general rule has been to place a revisors' note under each section in which there has been a material change."

3. STREETS AND HIGHWAYS—*Notice of Letting of Contract by Board of Supervisors—Sections 2029 and 2031 of the Code of 1919 Applicable Only to Contract for Maintenance.*—Sections 2029 and 2031 of the Code of 1919, requiring notice of letting of contracts made by the board of supervisors and publication of accepted bids, applies only to contracts for maintenance and improvement of highways, and not to contracts for the construction of new roads.

4. COUNTIES—*Streets and Highways—Power of Supervisors—Chapter 85 of the Code of 1919 not Intended to Curtail the Powers of the Board of Supervisors.*—Chapter 85 of the Code of 1919, entitled county superintendents of roads and road supervisors, embracing sections 2029 and 2031 of the Code of 1919, was not intended to curtail the powers of the board of supervisors conferred by chapter 84, but to deal mainly with the matters indicated by its title, though some of the powers and duties of the board of supervisors as they relate to the subjects of county superintendents of roads and road commissioners are properly embraced therein. Chapter 85, as an examination will show, seeks to establish a method of maintaining and keeping in repair existing, established roads, already in existence, and not to prescribe a system for constructing new roads involving the use of machinery other than a log drag.

5. COUNTIES—*Streets and Highways—Powers of the Board of Supervisors—Section 2029 of the Code of 1919—Acts of 1916, page 860.*—Acts of 1916, page 860, provides for notice of the letting of "these" contracts to be given to the public. When this provision was carried into section 2029 of the Code of 1919, the word "these" was changed to "all," and from this it was argued that all road contracts made by the supervisors must be so published. But an examination of other sections of chapter 85 of the Code, which embraces section 2029, shows that this cannot be the proper construction. It is not quite clear why the revisors substituted "all" for "these" in transferring the act of 1916 to the Code, but it seems fairly plain that they did not intend to extend the section to any contracts except those arising under chapter 85 of the Code of 1919, and they did intend it to apply to all contracts arising under the provisions of that chapter.

6. APPEAL AND ERROR—*Appealable Decrees—Decree Dissolving an Injunction and Adjudicating the Principles of the Case.*—A decree which dissolved an injunction, dismissed the bill at complainants' costs and disposed of the whole case, adjudicates the principles of the case and is appealable.

7. APPEAL AND ERROR—*Final Judgments and Decrees—Trial Court Still in Session when Appeal was Taken.*—In the instant case there was a motion to dismiss the appeal on the ground that the decree was not final, as the trial court was still in session when the appeal was taken, and no appeal would lie for the reason that the trial court had control over the decree until the adjournment of the term at which it was rendered.

*Held:* That there was no merit in this contention.

8. JUDGMENTS AND DECREES—*Control of Court Over Decree During Term—Effect of Granting Appeal and·Supersedeas.*—As a general rule, it is true that the trial court has control over all of its orders, judgments, and decrees during the term at which they are entered, but the granting of an appeal and supersedeas operates to remove the case from the lower court to the appellate court, and the lower court no longer has jurisdiction to set aside or annul the decree it had entered.

9. APPEAL AND ERROR—*Nature of Appeal—Not a New Suit.*—An appeal, as is well settled in this State, is not the institution of a new suit, but the removal and continuation of an old one.

10. APPEAL AND ERROR—*Power of Lower Court Over the Parties—Orders which Lower Court May Make.*—Although, perhaps, an appeal in a chancery cause does not here, any more than in England, stop the proceedings under the decree from which the appeal is taken, yet there can be no manner of doubt but that the effect of an appeal, when fully perfected by the execution of the proper supersedeas bond, is to deprive the subordinate court of all power over the parties and the subject matter of controversy, until the cause is remanded back

for its further action; and the only orders, therefore, which that court can rightfully make are such as are needful for the preservation of the *res* and rights of the parties pending the appeal.

11. APPEAL AND ERROR—*Power of Lower Court Over the Parties—Orders which Lower Court May Make.*—If after an appeal has been taken from a decree the lower court at the same term at which the decree was rendered sets aside the decree and enters an order during the same term granting the same relief that could be afforded by the appeal, it should be treated as if it were an order for the preservation of the rights of the parties pending the appeal, and, upon filing a duly authenticated copy thereof in the appellate court, the appeal should be dismissed, as this would afford the same measure of relief as could be obtained by the appeal, and do it more speedily and at less cost, and would certainly be an order of which the appellant could not complain.

12. APPEAL AND ERROR—*Limitation Upon Appeal—Appeal Before Adjournment of Term.*—Where an appeal is from a final decree the limitation on the time within which it must be applied for begins to run from the date of the decree and not from the time of the adjournment of the term at which by operation of law it becomes final. It follows, therefore, that an appeal may be taken from a decree, although the term at which it was rendered has not adjourned.

Appeal from a decree of the Circuit Court of Augusta county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Timberlake & Nelson* and *Curry & Curry,* for the appellants.

*Jos. A. Glasgow* and *H. H. Kerr,* for the appellees.

BURKS, J., delivered the opinion of the court.

This suit is the aftermath of *Baker* v. *Evers,* 137 Va. 492, 120 S. E. 278, in which it was held that the road authorities had the right to construct the road in controversy through the lands of Baker. The road was

about six miles in length, and pending the litigation in that case all of the road was constructed except that portion which passed over the land of Baker. Shortly after the judgment of this court in that case was certified to the trial court, the board of supervisors of Augusta county let to contract the building of the road through the lands of Baker. Thereupon D. O. Good and others, taxpayers in that road district, obtained an injunction against the performance of the contract on the ground that the price agreed to be paid was exorbitant, and that the contract had been entered into "without any notice whatever of the letting of this piece of road to contract to the public, by the posting of handbills and by advertising in a newspaper in Augusta county, as prescribed by section 2029 (Code of 1919), and when the contract was made and entered into, the making of the contract was not made public as required by section 2031 of the (1919) Code of Virginia." This injunction was subsequently dissolved and the complainants' bill dismissed at their costs. From that decree this appeal was taken.

[1] In the absence of fraud, and it is conceded there was none in this case, a taxpayer cannot thus call in question the amount of the consideration of a contract, otherwise valid, entered into by the board of supervisors of a county.

[2-4] This leaves for consideration only the question whether or not the contract entered into by the board of supervisors is subject to the provisions of sections 2029 and 2031 of the Code.* These sections are con-

---

*Sec. 2029. "Notice of the letting of all contracts shall be given to the public by the posting of hand bills in each precinct, and by newspaper advertising in at least one newspaper in each county, for such time and in such manner as the board of supervisors may direct. Such notices shall specify what maintenance or improvements shall be required, and what part, if any, the county road superintendent shall undertake. Such work as the appli-

tained in chapter 85 of the Code, the title of which is "county superintendents of roads and road supervisors." The chapter is taken in the main from an act approved March 23, 1916 (Acts 1916, page 860). The act amended section 14 of previous acts on the subject, and the amendment covered four pages of the acts. In accordance with the policy of the revision, the revisors divided the amended section into numerous shorter sections and carried it into chapter 85 of the Code. Numerous changes were made in the phraseology, many of which were necessitated by the mere change of form of the sections, others to make clearer what was intended. But mere changes in the phraseology of an act carried into a general revision of the statutes does not of itself indicate any intention to change the meaning of the statute, and this is especially true of the revision of 1919, if there is no revisors' note indicating a material alteration, for it is said in the preface to the Code, page 11: "The general rule has been to place a revisors' note under each section in which there has been a material change." The section referred to contains no such notes.

Chapter 85 of the Code, embracing sections 2029 and 2031 was not intended to curtail the powers of the board of supervisors conferred by chapter 84, but to deal mainly with the matters indicated by its title, though

---

cation of stone grading, or other work requiring machinery, shall be done by the county authorities, and that part let to bids shall only include such maintenance as does not require road machinery, excepting a log drag; and such maintenance, which work is let to contract, shall include dragging, keeping the ditches open, filling mud holes and depressions, and all like duties; but nothing in this section shall prevent the board of supervisors from having entire control as to making specifications for such roads as may be let to contract."

Sec. 2031. "Such bids as are accepted by the board of supervisors shall be published in some newspaper of general circulation in said county, giving the amount of the bid, and the boundaries of the sections of the road covered by each bid, and also the amount of the lowest bid, and the bidder, if the lowest bid has not been accepted."

some of the powers and duties of the board of supervisors as they relate to the subjects of county superintendents of roads and road commissioners are properly embraced therein. Chapter 85, as an examination will show, seeks to establish a method of maintaining and keeping in repair existing, established roads, already in existence, and not to prescribe a system for constructing new roads involving the use of machinery other than a log drag.

[5] The act of 1916 declares: "Notice of the letting of these contracts to be given to the public by the posting of handbills in each precinct and by newspaper advertising in at least one newspaper in each county as the board of supervisors may direct." When this was carried into section 2029 of the Code, the word "these" was changed to "all," and from this it is argued that all road contracts made by the supervisors must be so published. But an examination of other sections of that chapter will show that this cannot be the proper construction.

Section 2029 shows on its face that it was restricted to maintenance and improvements and does not apply to the construction of new roads. It provides that the "notices shall specify what maintenance and improvements shall be required, and what part, if any, the county road superintendent shall undertake." It then divides this work of maintenance and improvement into two classes, one of which is to be done by the county authorities and the other let to contract. It declares that "such work as the application of stone, grading or other work requiring machinery, shall be done by the county authorities," and that the part let to contract shall *only include such maintenance* as does not require road machinery, excepting a log drag. Of course, no

notice was required of work to be done by the "county authorities" and the work to be let to contract under this section embraced only *such maintenance* as does not require road machinery, except a log drag. If this section embraced *construction*, then it would have to be done by the "county authorities" and could not be let to contract, because it is expressly provided that the work to be let to contract shall *only include* such *maintenance* as is therein mentioned. It is not quite clear why the revisors substituted "all" for "these" in transferring the act of 1916 to the Code, but it seems fairly plain that they did not intend to extend the section to any contracts except those arising under chapter 85 of the Code, and they did intend it to apply to all contracts arising under the provisions of that chapter.

It is true that the construction and macadamizing of new roads involve much larger sums than contracts for mere maintenance and repairs, and it would seem reasonable that the legislature should require publication of the letting of the former as well as the latter. If it has not done so, the argument is one to be addressed to the legislature. All we decide is that it has not done so by sections 2029 and 2031 of the Code.

[6-10] There was a preliminary motion to dismiss the appeal in the case "on the ground that the decree appealed from was not a final decree. The court was still in session when this appeal was taken and the decree complained of was not final. *Non constat*, but that the court may have changed this decree before the court adjourned."

The decree complained of dissolved the injunction and dismissed the bill at the complainants' costs. It is clear that the appellants had the right to appeal because the decree dissolved the injunction and also ad-

judicated the principles of the case. Code section 6336. Furthermore, the decree disposed of the whole case. Manifestly, it was intended by this assignment to insist that the decree appealed from was not final, and that no appeal would lie for the reason that the trial court had control over the decree until the adjournment of the term at which it was rendered, and that the term had not adjourned when the appeal and supersedeas were granted. As a general rule, it is true that the trial court has control over all of its orders, judgments and decrees during the term at which they are entered, but the granting of the appeal and supersedeas operated to remove the case from the circuit court to this court, and the circuit court no longer had jurisdiction to set aside or annul the decree it had entered. As said in *Tyson* v. *Scott*, 116 Va. 243, 251, 81 S. E. 57, 60: "An appeal, as is well settled in this State, is not the institution of a new suit, but the removal and continuation of an old one." See also Burks' Pl. & Pr. (2d ed.) section 386.

In *Cralle* v. *Cralle*, 81 Va. 773, 775, it is said: "Although, perhaps, an appeal in a chancery cause does not here, any more than in England, stop the proceedings under the decree from which the appeal is taken, yet there can be no manner of doubt but that the effect of an appeal, when fully perfected by the execution of the proper supersedeas bond, is to deprive the subordinate court of all power over the parties and the subject matter of controversy, until the cause is remanded back for its further action; and the only orders, therefore, which the court can rightfully make are such as are needful for the preservation of the *res* and rights of the parties pending the appeal. *Slaughter House Cases*, 10 Wall. 273; *Littlejohn* v. *Ferguson*, 18 Gratt. (59 Va.) 53; *Moran* v. *Johnston*, 26 Gratt. (67 Va.) 108."

[11] In each of the foregoing cases, however, the trial court had adjourned before the supersedeas had been awarded. In the instant case it had not adjourned, but its order was never set aside. A majority of the court, but not the writer, think that if it had been set aside and an order entered during the same term granting the same relief that could be afforded by the appeal, it should be treated as if it were an order for the preservation of the rights of the parties pending the appeal, and upon filing a duly authenticated copy thereof in this court, the appeal would be dismissed, as this would afford the same measure of relief as could be obtained by the appeal, and do it more speedily and at less cost; and it would certainly be an order of which the appellant could not complain.

In 2 R. C. L., page 120, section 95, it is said: "Where an appeal with a supersedeas, or stay, has been taken, the jurisdiction of the trial court is suspended as to all matters necessarily involved in the appeal. Accordingly, pending an appeal, the lower court, as a rule, has no power to allow amendments of the proceedings. For example, pending an appeal from an order denying a motion to quash an execution, the court has no power to allow an amendment of the execution. So, also, pending an appeal, the trial court has no jurisdiction to entertain a bill to review the judgment, nor can the trial court set aside the order appealed from." See also *Planters Bank* v. *Neely,* 7 How. (Miss.), 80, 40 Am. Dec. 51; *State* v. *Kolsem,* 130 Ind. 434, 29 N. E. 595, 14 L. R. A. 566. In *Merrifield* v. *Western, etc. Co.,* 238 Ill. 526, 87 N. E. 379, 128 Am. St. Rep. 148, it is said: "When an appeal is perfected the jurisdiction and control of the court below cease and the appeal becomes a stay of all proceedings to enforce the execution of the judgment or decree."

There are some things that may be done by the trial court in aid of its decree (2 R. C. L., p. 120), but they are not pertinent to the present inquiry.

[12] Where the appeal is from a final decree, the limitation on the time within which it must be applied for begins to run from the date of the decree and not from the time of the adjournment of the term at which by operation of law it becomes final (Code section 6355; *Bragg* v. *Justis*, 129 Va. 354, 106 S. E. 335), and this time is not affected by the time at which the trial court adjourns. It is clear, therefore, that an appeal may be taken from a decree although the term at which it was rendered has not adjourned. In the instant case, the decree was valid when entered, it was never thereafter altered or amended, and was a final decree.

The motion to dismiss will be denied, and the judgment of the trial court will be affirmed.

*Affirmed.*