# Richmond.

## A. W. PATTERSON AND M. C. PATTERSON, EXECUTORS, ETC. v. OLD DOMINION TRUST COMPANY, SUBSTITUTED TRUSTEE, ET ALS.

December 22, 1927.

Reheard March 2, 1928.

1. APPEAL AND ERROR—*Whether Appeal or Writ of Error is a New Suit.*—It is well settled in Virginia that an appeal, as distinguished from a writ of error, is not the institution of a new suit, but the removal and continuation of an old one.

2. APPEAL AND ERROR—*Notice of Appeal—Lis Pendens while the Right to Prosecute the Cause Further by Appeal Remains.*—Where the law gives a right of appeal, all persons are necessarily charged with notice thereof, and though a final decree in form has been entered, the cause is still to be deemed pending while the right to prosecute it further by appeal remains.

3. LIS PENDENS—*Purchaser Pendente Lite—Purchase Made after Final Judgment and before an Appeal was Granted, but within the Time Allowed for an Appeal—Case at Bar.*—In the instant case, a trustee who under the trust was authorized to sell the trust property, without the intervention of a court of equity, to provide for the support of the beneficiary for life, not wishing to act on his own judgment sought the aid of a court of equity. Afterwards the trustee moved to dismiss his suit seeking the aid of the court and his motion was granted. Six days after the suit was dismissed the trustee and the life tenant conveyed the property to one W. On appeal the decree dismissing the suit was reversed. W. contended that as the decree dismissing the suit contained no suspending bond and no suspending bond was given until the appeal and supersedeas was awarded; that the trustee had full power to sell and convey the property to him at the time it did; that the court was without jurisdiction to set aside his deed if the trustee acted in good faith, and that the sale was at a fair price, and that he was not a *pendente lite* purchaser.

*Held:* That so far as the conveyance to W. was concerned, the suit should be considered as having been pending while the right of appeal existed, and that W.'s status as a *pendente lite* purchaser was

not affected by the fact that the decree dismissing the suit was not stayed and a suspending bond required by the circuit court.

4. Appeal and Error—*Suspending Bond—Suspension of Decree—Right to Appeal.*—The law of this State does not require a decree to be suspended or a bond given in order to apply for an appeal therefrom, and the omission to do either does not deprive the aggrieved party of that right.

5. Trusts and Trustees—*Sale of Trust Property—Trustee Seeking Aid of Court of Equity and after Dismissing his Suit Selling the Property before Time for Appeal from Decree Dismissing the Suit had Expired— Case at Bar.*—In the instant case a trustee and a purchaser of the trust estate from him were unwilling to close the proposed deal for the property until the sale was ratified by a court of equity, although the trustee had authority to sell without the intervention of a court of equity. Therefore the trustee brought suit in a court of equity to have the question determined whether the price was a fair one, and the trustee safe in making the sale. All the parties in interest were made parties to the suit and three of the remaindermen objected to the sale and were prepared to submit a counter offer for the property at a better price. These remaindermen objected to the dismissal of the suit at the instance of the trustee without being allowed to submit their offer, and proposed to appeal from the action of the court.

*Held:* That under these circumstances it was the duty of the trustee to wait until the time allowed by law for taking an appeal expired, before undertaking to convey the trust property to the purchaser at a smaller price than that it knew the remaindermen were ready to give, irrespective of the law of *lis pendens.*

6. Trusts and Trustees—*Duty of Trustee—Strict Neutrality Towards Beneficiaries.*—In the management of trust property, a trustee should always conduct himself with strict neutrality, favoring none of the beneficiaries, and endeavor to obtain an impartial direction in all cases of doubt or difficulty, and should also preserve and protect the trust fund for the benefit of all interested in the distribution thereof.

7. Trusts and Trustees—*Sale of Trust Property—Intervention of Court of Equity—Case at Bar.*—In the instant case a purchaser of trust property in conjunction with the trustee voluntarily submitted his offer for the approval or rejection of a court of equity. When it appeared that some of the remaindermen objected to the acceptance of the offer, the court on motion of the trustee dismissed the suit and the trustee conveyed the property to the purchaser before the time for an appeal from the decree dismissing the suit had expired.

*Held:* That the purchaser took the property subject to the outcome of the suit to which he was a party, and at his own risk; that he could

not be allowed to participate in an effort to withdraw the trust property from the jurisdiction to which it had been submitted, and thereby render abortive the decision of the Supreme Court of Appeals on the appeal from the decree dismissing the suit.

8. TRUSTS AND TRUSTEES—*Sale of Trust Property—Setting Aside Sale—Decree for Auction Sale—Case at Bar.*—In the instant case, a sut by a trustee to obtain the ratification or approval of a sale of the trust property to a purchaser, the court set aside the sale to the purchaser and entered a decree ordering an auction sale, upon an opening bid equal to that of two private offers made for the property by the former purchaser and the remaindermen. Since the making of these private offers, during the pendency of the litigation, it appeared that the property had greatly enhanced in value.

   *Held:* That it was manifestly the duty of the court, in order to obtain a fair test of its value, to have the property put up at auction before confirming either of the private offers tendered.

9. JUDICIAL SALES—*Fair Price—Test.*—A fair and just price alone could justify a court in disposing of property within its jurisdiction—a fair and just price, all things considered; that is, all the attendant circumstances having been duly regarded. It may be said that, after full notice, an open sale, fairly conducted, in the face of such competition as can be attracted, the highest bid which is made is a fair and just criterion of the value of the property at that time; and so, after-stated opinions, affidavits of under value, etc., are regarded with but little favor, and estimated as of light weight, in the presence of the fact established by the auction and its results.

10. TRUSTS AND TRUSTEES—*Trust Sale—Private Offers.*—In a proceeding by a trustee to obtain the approval of a court of equity for the sale of trust property, mere private offers for the trust property give the cfferors no equity in the property until accepted by the court.

11. TRUSTS AND TRUSTEES—*Sale of Trust Property—Sale Set Aside—Purchaser's Right to Recover Interest and Taxes.*—Where a sale of trust property is set aside and an auction sale decreed, the purchaser is entitled to recover the amount expended by him on account of taxes on the property and interest on his deferred payments out of the proceeds of the trust property when sold under the supervision of the court.

12. TRUSTS AND TRUSTEES—*Taxation—Refund to Beneficiary—Case at Bar.*—In the instant case a testator conferred on his trustee and the beneficiary of the trust power to sell any portion of the trust property for the purpose of changing the investment and producing a better income. Under other provisions a very broad power of disposition was conferred upon the trustee with the evident intention to provide liberally for the support and maintenance of the beneficiary, testator's daughter. Through no fault of the bene-

ficiary or the trustee the beneficiary obtained no income from the trust for a long period. The Supreme Court of Appeals was of the opinion that upon the sale of the trust property the beneficiary should be refunded out of the corpus of the estate the amount she paid for taxes while the property was unproductive. But as the point was not raised below the Supreme Court of Appeals did not pass finally on the matter, but left its determination to the trial court.

13. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Taxes as Between Tenant for Life and Remainderman.*—The general rule is that taxes which accrue during the estate of a tenant for life are liens on the estate of the life tenant only and cannot be enforced against the remainderman.

14. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Taxes as Between Tenant for Life and Remainderman—Where Estate is Administered by a Court of Equity.*—In the administration of a trust estate by a court of equity, however, the question of whether the taxes on the trust property should be paid by the life tenant or out of the corpus must, of course, depend upon the terms and purpose of the trust as disclosed by the instrument creating it, and the circumstances of the case.

15. TRUSTS AND TRUSTEES—*Sale of Trust Property Set Aside—Taxes—Case at Bar.*—In the instant case in a suit to obtain the approval of a court of equity of a sale of trust property by the trustee, the sale was set aside.

*Held:* That the beneficiary should account to the estate for the taxes paid by the purchaser out of the income the beneficiary received from the interest paid by the purchaser during the pendency of the suit, if such interest had been paid over to her by the trustee.

16. TRUSTS AND TRUSTEES—*Trust for Support and Maintenance—Liability of Corpus.*—A testator left a portion of his estate in trust for the support and maintenance of his daughter for life with remainder over. The trustee was authorized to sell the corpus of the estate if necessary for the support of the daughter, if the income was insufficient, of which the trustee should be the judge. The beneficiary claimed the right to be paid out of the corpus of the estate the difference between the annual amount she actually received and the annual amount necessary for her proper maintenance and support.

*Held:* That this was the plain intent of the will; the additional amount, if any, which was necessary for the purpose, was, under the terms of the will, a matter for the trustee to determine with the assistance and guidance of a court of equity.

17. TRUSTS AND TRUSTEES—*Infant Children of Beneficiary—Widow of Beneficiary—Parties to Proceedings for Sale of Trust Property—Case at Bar.*—In the instant case, a proceeding for the sale of trust property, a widow of one of the remaindermen took no interest in the trust

estate as his widow, his contingent remainder therein having vested under the will, at his death, exclusively in his infant children, whose interests were represented by a guardian *ad litem* appointed to defend them.

*Held:* That a petition by the widow for herself and as next friend asking that an offer for the property be accepted was properly dismissed.

18. Trusts and Trustees—*Sale of Trust Property—Auction Sale Under Decree of Court—Trustee as Special Commissioner—Case at Bar.*—In the instant case, a proceeding in a court of equity for the sale of trust property, the appointment of the trustee as special commissioner to make the sale was objected to. If it was the purpose of the court in doing this to allow the trustee commissions as special commissioner of the court in addition to those it would be entitled to in performing its duties as trustee, this action would entail an unnecessary expense upon the trust estate to which it should not be subjected. The trustee, as such, had full power to conduct and complete the proposed sale under the directions of the court, and should be required to do so in the absence of any good reason to the contrary.

19. Appeal and Error—*Costs.*—Where appellees substantially prevail, the costs of appeal are to be paid by appellants.

Appeal from a decree of the Circuit Court of Henrico county, setting aside a sale of trust property and ordering the property sold at public auction.

*Amended, and affirmed, and remanded.*

The opinion states the case.

*Julien Gunn* and *Wendenburg & Haddon,* for the appellants.

*Meredith & Meredith, Morton L. Wallerstein, Henry W. Oppenheimer,* and *McGuire, Riely & Eggleston,* for the appellees.

Chinn, J., delivered the opinion of the court.

This is the sequel of the case of *James T. Patterson, et als.* v. *Old Dominion Trust Company, Substituted Trustee,* 139 Va. 257, 123 S. E. 549.

The opinion of the Supreme Court of Appeals in that case—which is referred to for the previous history of this litigation—shows that the subject of complaint in that appeal was the dismissal of the suit, by a decree entered by the lower court on the 21st day of July, 1922.

It appears from the record of the instant appeal that on July 27, 1922, six days after the suit was dismissed by the court below, the aforesaid trustee and the life tenant, Mrs. Crutchfield, conveyed the property involved in the suit to the same Henry S. Wallerstein who is referred to in the preceding opinion and, contemporaneously therewith, Wallerstein executed a deed of trust on the property to secure the sum of $65,000.00 unpaid purchase money, in accordance with the terms of his offer.

The decree from which the former appeal was taken was reversed on June 12, 1924, and on October 30, 1924, James T. Patterson having in the meantime died, the answer of said James T. Patterson, A. W. Patterson and M. C. Patterson, as originally tendered on July 21, 1922, and partly set out in the former opinion, together with their counter offer for the property, was presented to the court by the surviving respondents, A. W. Patterson and M. C. Patterson, and filed in the cause. There were no further proceedings in the case until April 13, 1925, when the death of James T. Patterson being suggested, the cause was revived in the names of his executors, A. W. Patterson and M. C. Patterson; and subsequently, the answer of the infant children of James T. Patterson, namely: Fuller, James and Martha Patterson—who succeeded to their father's contingent interests in the property devised by the

third clause of Dr. Patterson's will—was filed by their guardian *ad litem*, Henry W. Oppenhiemer, setting forth the position taken by said guardian *ad litem* in their behalf. On November 20, 1925, A. W. Patterson and M. C. Patterson, in their own right and as executors of their deceased brother, James T. Patterson, tendered a supplemental offer in writing for the property in suit, which reads as follows:

"1. On July 21, 1922, the undersigned, together with said testator, submitted an offer in writing for the purchase of the two parcels of land in the bill and proceedings mentioned, which offer is still open, and we desire to have same accepted and confirmed by the court, so that Mr. James T. Patterson's widow and children may share in the benefits of same.

"2. While said offer may have been revocable at the instance of those succeeding to the rights of said decedent, on account of his death, we are advised that it could not be revoked by anyone else for that reason, and they do not wish it abrogated.

"3. If, however, the court should be of opinion that said joint offer was terminated *ipso facto* as to said testator on his demise as aforesaid, then we are further advised and insist that said offer remains in force as to us, and should be approved accordingly.

"4. But, if necessary, we now renew said proposition as formerly made, or with such reasonable modification of same as to terms of payment as the court may deem proper."

This proposal was duly filed by a decree entered in the cause, and by another decree entered on May 10, 1926, Mrs. Mattie G. Patterson, widow of James T. Patterson, was permitted to file a petition for herself, and as next friend of the infant children of said James T. Patterson, praying that the said offer be accepted,

and that another guardian *ad litem* be appointed to represent said infants; but by the same decree said petition was dismissed.

A few days later, H. S. Wallerstein—in order to replace the commissions paid the real estate agents by the trustee, and thereby meet the net price offered by the remaindermen—submitted to the court an additional offer in writing whereby he agreed to pay $3,750.00 more for the property than he had originally proposed.

The cause finally came on to be heard on the 13th day of May, 1926, upon the pleadings, exhibits, said offers in writing, and the depositions taken in behalf of the parties; whereupon the court set aside the deed of July 27, 1922, conveying the property to H. S. Wallerstein, and the deed of trust given by Wallerstein on the same date to secure the unpaid purchase money; directed the trustee to cancel and deliver to Wallerstein his notes for the deferred payments; retained for future consideration the supplemental Patterson offer and the several proposals made by Wallerstein; and then proceeded to decree in part, as follows:

"And the court being of opinion that the proper procedure in this case is to have the land in suit, hereinafter more fully described, offered for sale at public auction upon an opening bid of a sum in excess of the respective amounts represented by the said offers for the said tracts or parcels of land made by the said A. W. Patterson and M. C. Patterson in their own right and as executors of the estate of James T. Patterson, deceased, and by said Henry S. Wallerstein, which said offers in their respective final forms each represent the net sum of seventy-five thousand dollars ($75,000.00), with interest thereon at the rate of six per centum per annum from the 27th day of

July, 1922, to date, together with such sums as are properly chargeable as taxes on said land from the said 27th day of July, 1922, to date, thereby making a sum total of $..............."

The executors of James T. Patterson having asked for a review of this decree, and all the parties in interest having appeared by counsel and presented their various objections and contentions in regard to the same to this court, the question before us, in its broader aspect, is whether or not the said decree is such as the lower court should have entered under the facts and circumstances of the case.

It is contended for Mr. Wallerstein that as the decree of July 27, 1922, dismissing the suit, contained no suspending order, and no suspending bond was given until the appeal and supersedeas was awarded on the 4th day of November, 1922, the trustee had full power to sell and convey the property to him at the time it did; and the court was without jurisdiction to set aside his deed, if the trustee acted in good faith and the sale was at a fair price; in other words, that he is not a *pendente lite* purchaser.

The decisions differ as to the effect of the rule of *lis pendens* when the purchase is made after final judgment or decree and before an appeal or writ of error is granted, but within the time allowed by law for a writ of error or appeal. The following statement, taken from 21 Am. & Eng. Enc. of Law (2nd ed.), page 619, is indicative of the diversity of opinion on the subject:

"The effect of the *lis pendens* of an action or suit upon voluntary transfers of the property the rendition of judgment or decree, but before appellate proceedings, or proceedings in the trial court to modify, vacate, or set aside are instituted and pending, has been variously

determined. Some of the decisions hold that the *lis pendens* continues until the expiration of the time allowed by law within which the particular proceeding may be taken. Under others the rendition of the judgment or decree terminates the *lis pendens* except, perhaps, where the further proceeding is a mere continuation of the action or suit, like an appeal; and voluntary transfers of the property in the interim before such proceedings are instituted and pending, if taken in good faith and without notice, are valid. Still other decisions indicate an intermediate ground, requiring that the further proceedings be instituted without unnecessary delay, the *lis pendens* being continued a reasonable time for the purpose." See also notes 10 L. R. A. (N. S.) 443; 27 L. R. A. (N. S.) 735; 10 A. L. R. 415; and 17 R. C. L. pages 1040-1043.

It may be said, however, that in those cases in which it is held that the doctrine of *lis pendens* does not apply to one who purchases in good faith in the *interim* between final judgment or decree and the writ of error or appeal, the decision is generally based upon the ground that the appellate proceeding constitutes a new suit, and is not a continuation of the original suit.

[1, 2] It is well settled in Virginia that an appeal, as distinguished from a writ of error, "is not the institution of a new suit, but the removal and continuation of an old one." *Tyson* v. *Scott*, 116 Va. 243, 81 S. E. 57; *Good* v. *Board of Supervisors*, 140 Va. 399, 125 S. E. 321; Burks' Pl. & Pr. (2nd ed.) sec. 386. We, therefore, feel constrained to adopt the view of the author of the text in 17 R. C. L. page 1042, insofar as the same is applicable to an appeal from an final decree in this jurisdiction, where he says: "Where the law gives a right of review to an appellate court, all persons are necessarily charged with notice thereof, and it would

seem reasonable to hold that the operation of *lis pendens* ought to be adequate to give a litigant protection until he can pursue all the remedies to which he is entitled in the action, and therefore, though a judgment or decree final in form has been entered, the cause ought still to be deemed pending while the right to prosecute it further by appeal remains.'' We think an examination of the adjudged cases will disclose that this view is supported by the weight of authority.

[3-5] Being of opinion that, so far as the conveyance to Mr. Wallerstein is concerned, this suit should be considered as having been pending while the right of appeal existed, we think it is corollary from that conclusion that his status as a *pendente lite* purchaser is not affected by the fact that the decree dismissing the suit was not stayed and a suspending bond required by the circuit court. The law of this State does not require a decree to be suspended or a bond given in order to apply for an appeal therefrom, and the omission to do either does not deprive the aggrieved party of that right. But in our view of the case, the learned judge of the circuit court acted properly in cancelling the deed to Mr. Wallerstein, irrespective of the law of *lis pendens.* Both the trustee and Wallerstein were at first unwilling to close the proposed deal for the property until the sale was ratified by the court; and the purpose of the suit was to have the question of whether the price was a fair one, and the trustee safe in making the sale, adjudicated by the court after all the parties in interest had an opportunity to be heard on the subject. All the parties to the conveyances were likewise parties to the suit and, therefore, knew that the three remaindermen hereinbefore mentioned objected to the sale at that price and were prepared to submit a counter offer for the property at a better price. They likewise

knew that the remaindermen objected to the dismissal of the suit without being allowed to submit their said offer, and proposed to appeal from that action of the court. Under these circumstances, it was at least the duty of the trustee to wait until the time allowed by law for taking an appeal expired, before undertaking to convey the trust property to Mr. Wallerstein at a smaller price than that it knew the remaindermen were ready to give for it.

In speaking for the court in the former opinion in this case Judge Campbell said:

[6] "In the management of trust property, a trustee should always conduct himself with strict neutrality, favoring none of the parties to the suit, and endeavor to obtain an impartial direction in all cases of doubt or difficulty, and should also preserve and protect the trust fund for the benefit of all interested in the distribution thereof.

"The trustee, however, in this case, not being willing to act on its own judgment, submits itself and the trust estate to the jurisdiction of a court of equity and seeks its aid by impleading those who *may be benefically* interested in the trust estate. By thus impleading the remaindermen, the trustee recognized their rights in the trust property and made them wards of a court of equity, whose peculiar duty it was to see that they were not arbitrarily dealt with by the trustee."

[7] The least that can be said of Mr. Wallerstein's part in the transaction is, that having voluntarily submitted his offer for the approval or rejection of the court, and having full knowledge of all the above recited facts, he took the property subject to the outcome of the suit to which he was a party, and at his own risk. Upon no principal of law or equity should he be allowed to participate in an effort to withdraw

the trust property from the jurisdiction to which it has been submitted, and thereby render the former decision of the Supreme Court of Appeals in this case abortive.

The circuit court being clearly right in setting aside the conveyance to Mr. Wallerstein, the next question presented is whether or not the court acted properly in withholding the so-called "supplemental" offers of the appellants and Wallerstein, and ordering the property to be sold at auction. Upon this question the parties interested in the trust take various and complex positions.

The appellant remaindermen oppose an auction sale, and insist it would be to the advantage of the life tenant and remaindermen to accept their offer, which should be given the preference over that of Wallerstein. The trustee and Mrs. Crutchfield take the position, that if the deed to Wallerstein is not allowed to stand, his offer should be given the preference, because it was, at the time, a fair price, and the only one they could obtain after many years of effort to sell the property; but if his offer is not accepted, the property should be sold at auction.

W. Pernet Patterson, Mrs. Crutchfield's brother, and one of the remaindermen, declines to join in the offer made for the property by the other remaindermen, and takes the position that if Wallerstein's offer is not accepted by the court, it should be sold at public auction. The guardian *ad litem* for the infant children of James T. Patterson insists that the property should be sold at auction, and the decree appealed from is proper in all other respects.

[8] We cannot undertake to discuss in detail the arguments advanced in support of these conflicting contentions. Five separate briefs have been filed in behalf of the respective parties, and the case ably and

earnestly argued from as many different angles; but upon consideration of the whole case, we are of the opinion that the provisions of the decree with respect to the sale of the property are also right under the circumstances then existing.

At the time the decree was entered there were two offers before the court of $75,000.00 each, neither of which had been accepted or rejected. Much evidence had been taken as to what constituted a fair price for the property when Wallerstein made his offer in 1922, and at that time (1926), which was in the main opinion evidence and was in considerable conflict, but it clearly appeared that the property had greatly enhanced in value since the litigation commenced; Mr. A. W. Patterson himself having testified, when his depositions was taken in 1925, it was then worth from $135,-000.00 to $160,000.00. The property in question has never been productive of any income, and the purpose of the bill filed by the trustee was to make sale of the same to provide an income therefrom for Mrs. Crutchfield by investment of the proceeds; notwithstanding its powers under the will, the trustee had brought the trust property into a court of equity and sought its aid in disposing of it. In that situation, and in view of the evidence before it, it was manifestly the duty of the court, in order to obtain a fair test of its value, to have the property put up at auction before confirming either of the private offers tendered.

In *Todd* v. *Gallego Mills*, 84 Va. 591, 5 S. E. 678, the court said:

[9] "A fair and just price alone could justify a court in disposing of property within its jurisdiction—a fair and just price all things considered; that is, all the attendant circumstances having been duly regarded. It may be said that, after full notice, an open sale,

fairly conducted, in the face of such competition as can be attracted, the highest bid which is made is a fair and just criterion of the value of the property at that time; and so, after-stated opinions, affidavits of under value, etc., are regarded with but little favor, and estimated as of light weight, in the presence of the fact established by the auction and its results."

[10] The mere private offers made by appellants and by Wallerstein give them no equity in the property until accepted by the court, and the court could not have approved either of said offers without disposing of the property at a price which appeared, at the time, to be far less than its actual value. The decree expressly invites both of said parties to raise their respective offers, or to bid at the proposed auction, and appellants could not reasonably have expected more, unless they desired to obtain the property at a bargain. *Ewald* v. *Crockett*, 85 Va. 299, 7 S. E. 386.

[11] Appellants assert in their petition for appeal that if the property is sold at auction "either Wallerstein must lose the amount in interest and taxes paid by him, * * * or the life tenant made to refund to Wallerstein the amount so paid by him, or the trustee forfeit the amount for his wrongdoing."

With this proposition we cannot agree. It is self-evident that the amount expended by Wallerstein on account of taxes and interest on his deferred payments was for the benefit of the trust, and so, upon every principle of equity and justice, he should be reimbursed therefor out of the proceeds of the trust property when sold under the supervision of the court.

It is uncontroverted that the real estate involved in the suit constitutes the chief portion of the trust estate; that it has been unproductive of income; that Mrs. Crutchfield had paid the taxes thereon until it was

transferred to Wallerstein in 1922; and it is contended by Mrs. Crutchfield that she not only should not be required to refund the taxes and interest paid by Wallerstein, but should be allowed out of the corpus of the estate the total amount which she has paid as taxes on the unproductive portion of the property.

After creating the trust, Dr. Patterson's will provides as follows:

"The said R. Fuller Patterson as trustee for any daughter, and any trustee who may be substituted in his place, is authorized and empowered to sell any portion of the trust property *for the purpose of changing the investment and producing a better income,* when, in his judgment and that of my said daughter, it shall be judicious to do so, and if the income from the trust property shall be insufficient to provide for her proper maintenance and support, of which the trustee shall be the judge, he is authorized and empowered to sell for that purpose any portion of the trust property and so much of the proceeds (principal and interest) as he may deem necessary; and, if in the judgment of the trustee it shall at any time be more to the interest of the trust property and all concerned therein to borrow money for the support of my said daughter than to sell for that purpose, as above authorized, he is empowered to do so, and to pledge, hypothecate or convey in trust any part of the trust property. In all cases of sales or encumbrances of the trust property, as hereinbefore authorized, the trustee shall act at the request of my said daughter and with her consent, to be evidenced by her uniting with him in the deed or writing making the sale or encumbrance; and the purchaser in such case is not to be responsible for the proper application of the proceeds." (Italics supplied.)

As said by the court upon the former appeal:

"The power of disposition conferred upon the trustee is unusually broad. It is evident from the language employed that the intention of the testator was to provide liberally for the support and maintenance of his daughter."

[12] Considering the power conferred on the trustee and Mrs. Crutchfield "to sell any portion of the trust property for the purpose of changing the investment and producing a better income," together with the other powers conferred by the will, we think it equally obvious that the testator desired Mrs. Crutchfield to receive, while living, the benefit of the best income the entire trust property, properly managed, could be made to produce, and did not intend, in any event, that any portion of it should be a burden upon her. This being so, we are of the opinion that Mrs. Crutchfield should be refunded out of the corpus of the estate the amount she paid for taxes assessed against the unproductive portion of the trust property before it was transferred to Wallerstein. To require her to assume this burden, and thereby curtail the income she has received from the other portion of the estate would defeat the manifest purpose and intent of her father as expressed in his will.

[13-15] It is true that, under the law of Virginia, the general rule is that taxes which accrue during the estate of a tenant for life are liens on the estate of the life tenant only and cannot be enforced against the remaindermen. (*Tabb* v. *Com.*, 98 Va. 47, 34 S. E. 946, 51 L. R. A. 283; *Glenn* v. *West*, 106 Va. 356, 56 S. E. 143.) In the administration of a trust estate by a court of equity, however, the question of whether the taxes on the trust property should be paid by the life tenant or out of the corpus must, of course, depend upon the terms and purpose of the trust as disclosed

by the instrument creating it, and the circumstances of the case. Both the trustee and Mrs. Crutchfield had made every reasonable effort to dispose of the unproductive portion of the estate for the purpose of changing the investment before it was transferred to Wallerstein, and the fact that no income could be derived from it was without the default of either of them, in the management of the estate or otherwise. Upon the same principle, however, Mrs. Crutchfield should account to the estate for the taxes paid by Wallerstein, out of the income she received from the interest paid by him during the pendency of this suit, if such interest has been paid over to her by the trustee.

[16] Mrs. Crutchfield further claims that she should be paid out of the corpus of the estate "the difference between the annual amount she has actually received and the annual sums to which she was entitled since her father's death—that is to say—such an amount in addition to her annual income from the trust estate as was necessary 'for her proper maintenance and support.'" That such is the plain intent of Dr. Patterson's will seems beyond question, but as the facts are not before us, the additional amount, if any, which was necessary for the purpose specified, is, under the terms of the will, a matter for the trustee to determine with the assistance and guidance of the court.

[17] The dismissal of the petition of Mrs. Mattie G. Patterson is assigned as error. This objection is without merit. Mrs. Patterson took no interest in the trust estate as the widow of Mr. James T. Patterson, his contingent remainder therein having vested under the will, at his death, exclusively in his infant children. It may also be observed that the interests of said infants have been ably and conscientiously represented by the guardian *ad litem* appointed to defend them,

and there was no occasion whatever to appoint another in his place, unless it be that his views as to the best interests of his wards in regard to the disposition of the property do not coincide with those of the appellants.

[18] Appellants also make objection to the appointment of the trustee as special commissioner to make the sale. If it was the purpose of the court in doing this to allow the trustee commissions as special commissioner of the court in addition to those it would be entitled to in performing its duties as trustee, we think this action would entail an unnecessary expense upon the trust estate to which it should not be subjected. The trustee, as such, has full power to conduct and complete the proposed sale under the directions of the court, and should be required to do so in the absence of any good reason to the contrary.

The decree of the lower court directs that no bid should be received at the auction sale which is not in excess of the sum which had been offered for the property plus the interest and taxes which had accrued from July 27, 1922, to the date of the decree—which aggregate sum, as determined by the decree at that time, amounted to $98,000.00. As this provision of the decree is in accord with the views of this court, it follows that the decree should now be so amended as to fix the minimum bid to be received at an amount sufficient to include the interest and taxes which have been paid, or accrued, since the date of the said decree.

For the reasons stated, we are of opinion that the decree appealed from, with the exception of the slight alterations above indicated, should be affirmed, and the cause remanded to the circuit court of Henrico county, to be therein proceeded with in accordance with the views expressed in this opinion.

It has now been over five years since this suit was

instituted.   The sole object of the suit was to change the investment in this property to provide a better income for the life tenant in accordance with the wishes of Dr. Patterson as expressed in his will, and the property has not yet been disposed of.   The life tenant has just cause to make the complaint that, although about fifteen years have elapsed since her father's death, little effect has yet been given to his intentions in providing for her.   We have, therefore, endeavored to dispose of all the material questions in the case, as presented, which now appear necessary to effectuate those intentions and to promote the end of this litigation.

[19] Appellees having substantially prevailed, the costs in this court will have to be paid by appellants.

*Amended, and affirmed, and remanded.*

## ON REHEARING.

Upon the petition for a rehearing filed by the appellants, executors of James T. Patterson, deceased, the following order was entered:

"On mature consideration of the petition of the appellants to set aside the decree pronounced herein on the 22nd day of December, 1927, and grant a rehearing thereof, the prayer of the petition is granted. The rehearing and reargument will be confined to one question solely.   That question is one of the matters upon which the petition is based, viz, the holding by the court, in the opinion handed down, that after the sale Mrs. Crutchfield should be refunded out of the corpus of the estate the amount she paid in taxes assessed against the unproductive portion of the trust property before it was transferred to Wallerstein."

The question referred to has been reargued and submitted to the court. In its opinion the court held that Mrs. Crutchfield should be refunded, out of the corpus of the estate, the amount she paid in taxes assessed against the unproductive portion of the trust property before it was transferred to Wallerstein. The reasons for this holding are given in the opinion, and the court explained why in the instant case the general rule, that the burden of paying the taxes on the corpus of the property falls upon a life tenant, did not apply to the provision made for Mrs. Crutchfield. We are still of opinion that, upon all the facts appearing to the court here from the record in the case, the trustee and Mrs. Crutchfield would have a right to ask that this be done, and the equities of the case require that such request be complied with. However, it is insisted by the appellants, and also on behalf of the infant remaindermen, that this question was not raised in the lower court, and no ruling has been made in the trial court in this respect adverse to the appellees or otherwise. Under these circumstances the court now modifies its opinion to the extent that it shall not be taken as passing finally upon the matter referred to. And the final adjudication upon the question, whether Mrs. Crutchfield should be refunded out of the corpus of the trust estate the amount she paid in taxes assessed against the unproductive portion of the trust property before it was transferred to Wallerstein, is left to the determination of the trial court, when the court comes to deal with the proceeds of the sale after a sale has been had. In all other respects the opinion of the court will remain unaltered.

*Decree affirmed.*