STATE ex rel. RANKIN, Plaintiff, *v.* WIBAUX COUNTY
BANK OF WIBAUX, Defendant.

MULLENDORE, Receiver, Respondent, *v.* AETNA CASU-
ALTY AND SURETY CO. et al., Appellants.

(No. 6,293.)

(Submitted June 25, 1929.  Decided July 16, 1929.)

[281 Pac. 341.]

534

*Messrs. Wood & Cooke,* for Appellant American Surety Company of New York, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

*Mr. R. F. Gaines,* for Appellant Aetna Casualty & Surety Company, submitted a brief and argued the cause orally.

*Messrs. Loud & Leavitt,* for Respondent, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This is an appeal by Aetna Casualty & Surety Company and American Surety Company of New York from an order made on the twenty-first day of October, 1927, directing the receiver of the Wibaux County Bank to pay a dividend out

of the stockholders' liability fund on all claims filed and approved against the defunct bank.

Henry Mullendore was appointed receiver of the insolvent bank in a proceeding brought by the Attorney General of the state against the Wibaux County Bank, and has since his appointment been liquidating affairs of the bank under the supervision and direction of the court.

The American Surety Company presented to the receiver a preferred claim against the bank in the sum of approximately $30,000, basing its claim of preference on the fact that it became subrogated to the rights of the United States, under section 3466, United States Revised Statutes (31 U. S. C. A., sec. 191). The claim was allowed by the receiver and later approved by the court as a common claim, and the claim of preference disallowed. It also filed a preferred claim for the sum of approximately $4,500, which was duly allowed. The Aetna Casualty & Surety Company had a preferred claim of $6,500, based upon a judgment against the receiver.

Thereafter the receiver presented a petition to the court setting forth the claims against the bank, both common and preferred; that he had collected on account of the liability of stockholders a sufficient sum in amount to pay a dividend of five per cent on all claims filed and allowed, and prayed an order requiring all persons interested to appear before the court and show cause why distribution should not be made. Upon this petition an order was made fixing the date for hearing, and requiring all persons interested to appear and show cause why the prayer of the petition should not be granted. It was further ordered that a copy be served on American Surety Company and Aetna Casualty & Surety Company, in the same manner as a summons in a civil action. Before the time for the hearing, the surety companies named filed a petition for the removal of the cause into the United States district court, accompanied by the requisite bond. They likewise filed separate returns and answers to the order to show cause, asserting, in substance, that they were preferred creditors of the bank, and that they have a lien upon, and were entitled to,

priority of payment out of the general and unpledged assets in the possession of the receiver, and as such preferred creditors they were entitled to preference in payment over other general creditors out of the moneys realized from the enforcement of stockholders' liability. The court ignored the petition for removal, and, after hearing, made the order complained of, directing the payment of dividends substantially as prayed for.

Thereafter the American Surety Company filed the removal proceedings in the United States district court with its bill of complaint setting forth the removal proceedings, the action of the court in disregarding such removal proceedings, and prayed for a decree enjoining the receiver from complying with the order directing the distribution of the bank assets. An order to show cause was issued, and, upon the hearing, an injunction was granted. From the decree, the receiver appealed to the circuit court of appeals where the decree was reversed. (*Mullendore* v. *American Surety Co.,* 27 Fed. (2d) 572.) Application for a writ of certiorari to the United States circuit court was denied by the supreme court. (*American Surety Co.* v. *Mullendore,* 278 U. S. 653, 73 L. Ed. 212, 49 Sup. Ct. Rep. 178.) Upon request of the surety companies, proceedings here were stayed pending determination of that appeal.

Counsel for the surety companies first contend that, by reason of the filing of their petition for removal to the United States district court, the lower court was without jurisdiction to make and enter the order of October 21, 1927. With this contention we cannot agree.

The right of removal is purely statutory, and the case must come within the statute. (*Phoenix Ins. Co.* v. *Pechner,* 95 U. S. 183, 24 L. Ed. 427; *Great Northern Ry. Co.* v. *Alexander,* 246 U. S. 276, 62 L. Ed. 713, 38 Sup. Ct. Rep. 237; *Kentucky* v. *Powers,* 201 U. S. 1, 5 Ann. Cas. 692, 15 L. Ed. 633, 26 Sup. Ct. Rep. 387.) The court was not ousted of jurisdiction if the removal proceedings were not authorized (*Phoenix Ins. Co.* v. *Pechner,* supra; *Johnson* v. *Wells Fargo & Co.* (C. C.), 91 Fed. 1), and it was not bound to surrender its jurisdiction on the petition for removal unless a case was

made which on the face of the record showed petitioners had a right to the transfer (*Yulee* v. *Vose*, 99 U. S. 545, 25 L. Ed. 355). As was said by the supreme court of the United States in the case of *Stone* v. *South Carolina*, 117 U. S. 430, 29 L. Ed. 962, 6 Sup. Ct. Rep. 799, 800: "His petition for removal when filed becomes a part of the record in the cause. It should state facts which, when taken in connection with such as already appear, entitle him to the transfer. If he fails in this, he has not, in law, shown to the court that it cannot 'proceed further with the suit.' Having once acquired jurisdiction, the court may proceed until it has been judicially informed that its power over the cause has been suspended." If the cause was not removable, or if a prima facie case was not shown by the record, then the lower court properly ignored the removal proceedings, and was acting within its authority in making the order complained of.

It only remains to consider whether on the facts disclosed it appeared that the proceedings were removed from the state court by the filing of the petition of the surety companies, and about that little need be said. Whether the United States court had jurisdiction of the proceedings was for the determination of that court and, having passed upon the question adversely to the contention of counsel and determined that the cause was not removable (*Mullendore* v. *American Surety Co.*, supra), we will not sit in review on the judgment of that court. Its determination of the question is final and conclusive.

It is next contended that the order for the distribution of the moneys collected on account of the liability of the stockholders is contrary to law. It is urged that the surety companies are entitled to have such funds disbursed to them to apply upon their preferred claims to the exclusion of the general claims.

Our statute relating to the liability of stockholders (sec. 6036, Rev. Codes 1921, as amended by Chapter 9, Laws of 1923), in so far as applicable, provides: "The stockholders of

every bank shall be severally and individually liable, equally and ratably, and not one for the other, for all contracts, debts, and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. * * * The receiver is authorized and empowered to receive and receipt for any and all amounts due and collected from stockholders, and shall from time to time, under order of the court, distribute the amounts so collected without diminution to the creditors of the bank in this section enumerated.''

While this Act does not provide that the moneys thus collected shall be ratably distributed to all creditors, we think the equitable rule that ''equality is equity'' applies.

This Act, as section 4012, Revised Codes of 1907 (in a slightly different form), was construed by this court in the case of *Barth* v. *Pock*, 51 Mont. 418, 155 Pac. 282, where Mr. Justice Holloway, speaking for the court, said: ''The liability is several and individual, created by statute in favor of all who are creditors at the date of the bank's failure. Under this statute, the fund collected from an assessment upon the stock is held in trust for a ratable distribution among all the creditors.'' And ''the statutory double liability of a stockholder is peculiar to the law governing banking corporations—including therein trust companies. The creditor of a trading corporation must look to the corporation's assets for the discharge of his claim, but in a sense, the creditor of a banking corporation has double security. He may look to all the assets of the bank in the first instance, and, if they are not sufficient, he may then call upon the stockholders to contribute a fund which may equal the par value of the entire authorized capital. * * * It is a reserve, trust fund created for the benefit of the creditors, and under our statute must be distributed ratably to all of them.'' The court read nothing into the statute, but announced a well-recognized equitable rule always applicable to the administration of insolvent estates—that ''equity is equality.''

Mr. Pomeroy, in his work on Equity Jurisprudence, says: "Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, Equality is Equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a pro rata distribution or payment." (1 Pomeroy's Equity Jurisprudence, 4th ed., sec. 407.) Again the same author says (section 410): "Another remarkable and most just application of the principle, often leading to results very different from those produced by the operation of legal rules, may be seen in all those instances where a court of equity acquires jurisdiction, from any cause, to wind up, distribute, or settle an estate, property or fund against which there are a number of separate claimants. One example is that of settling the affairs of an insolvent partnership, corporation, or individual debtor in a creditor's suit brought by one on behalf of all other creditors, where the assets are not sufficient to satisfy all demands in full; the court always proceeds upon the principle that equality is equity, and of apportioning the property pro rata among all the creditors." (See, also, 3 R. C. L. 642; 7 C. J. 747; 2 Tardy's Smith on Receivers, sec. 602.)

While our statutes do not provide in what proportions the distribution of the stockholders' liability fund shall be made, we are of opinion that, upon equitable grounds, it must be distributed ratably to all creditors of the insolvent bank.

But counsel contend that since section 6036, supra, as ▮▮▮▮ amended, was repealed by Chapter 89 of the Laws of 1927, an Act revising and codifying the banking laws of the state, and re-enacted, with amendments, as section 21 of that chapter, this indicates a legislative intent to change the method of distributing the stockholders' liability fund.

Section 21 provides that moneys collected on account of stockholders' liability "shall be distributed to the creditors of

the bank according to their several rights in the same· proportion as the amount of a given claim of a creditor bears to the amount of the claims of all creditors, and without regard to the rank or class or character of claims." Chapter 89 has no application to banks in the course of liquidation. (Sec. 144.) Counsel for appellants assert that since the amendment changes the phraseology of the former Act, it will be presumed that it was the intention of the legislature to make a corresponding change in its meaning.

It is generally held that where the phraseology of a statute is changed, it will be presumed that the legislature in adopting the amendment intended to make a change in the existing law, and the courts will endeavor to give some effect to the amendment. (36 Cyc. 1164; 2 Lewis' Sutherland on Statutory Construction, sec. 401.) But every change of phraseology does not indicate a change of substance and intent. The change may be made to express more clearly the same intent or to improve the diction. (2 Lewis' Sutherland on Stat. Constr., Id.) While the presumption to change the substance is fairly strong in the case of an isolated, independent amendment, it is of little force in the case of amendments adopted in a general revision or codification of the laws. (36 Cyc. 1164; 25 R. C. L. 1050; *Rural High School* v. *School District*, 34 Idaho, 222, 200 Pac. 138; *Ollila* v. *Huikari*, 237 Mass. 54, 129 N. E. 395; *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, 131 N. E. 207; *State* v. *Prater*, 48 N. D. 1240, 189 N. W. 334; *Marqua* v. *Martin*, 109 Ohio St. 56, 141 N. E. 654; *Good* v. *Board of Supervisors*, 140 Va. 399, 125 S. E. 321; *In re Miles' Estate*, 272 Pa. St. 329, 116 Atl. 300; *Hall* v. *Jeffreys McElreath Co.*, 37 Ga. App. 581, 140 S. E. 910; *Firehammer* v. *Interstate Securities Co.*, 170 Minn. 475, 212 N. W. 911; *King* v. *Smith*, 91 N. J. L. 648, 103 Atl. 191.)

It is a general rule of statutory construction that the intention of the legislature must be gathered from the language employed by the lawmakers. (*State ex rel. Murray* v. *Walker*, 64 Mont. 215, 210 Pac. 90; *State ex rel. Carter* v. *Kall*, 53

Mont. 162, 5 A. L. R. 1309, 162 Pac. 385; *State ex rel. Evans* v. *Stewart*, 53 Mont. 18, 161 Pac. 309.) As above pointed out, Chapter 89 is a codification and revision of the banking laws, and the fact that the phraseology of section 6036 was changed, is of but little force as an aid to the presumption that a corresponding change in the substance of the law was intended. There is not anything in the language used in section 21, or in the history of Chapter 89, indicating a clear legislative intent to change the substance of section 6036, as amended. We think that section 21 is but declaratory of the then existing law.

Counsel contend that by virtue of the provisions of section 3466, United States Revised Statutes (Title 31, sec. 191, U. S. C. A.), the surety companies are preferred creditors and entitled to have their claims paid out of the fund in dispute before the payment of dividends to other creditors. The contention is not tenable.

Section 3466 reads: "Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor, are attached by process of law, as to cases in which an act of bankruptcy is committed."

This right of priority is not an attribute of sovereignty, but depends on the Acts of Congress. (*United States* v. *State Bank*, 6 Pet. (U. S.) 29, 8 L. Ed. 308; *Liberty Mutual Ins. Co.* v. *Johnson Shipyards Corp.*, 6 Fed. (2d) 752.) The United States has preference in the payment of its debts, by virtue of section 3466, under any of the conditions mentioned in the section, but not in the distribution of funds which for any reason do not come within the statute. (*Davis* v. *Pringle*, 1 Fed. (2d) 860, affirmed in 267 U. S. 588, 69 L. Ed. 801, 45 Sup. Ct. Rep. 352; *United States* v. *Heaton*, 128 Fed. 414.) It establishes priority which is limited to the particular state

542

of things specified in the Act. (*United States* v. *Oklahoma*, 261 U. S. 253, 67 L. Ed. 638, 43 Sup. Ct. Rep. 295.)

We think it manifest that the provisions of section 3466, supra, relate to the property and assets of the debtor and have no application whatever to a trust fund created by statute, and in which the bank has no interest. The fund collected under section 6036, as amended, is not an asset of the insolvent bank (*Sargent* v. *Waterbury*, 83 Or. 159, 161 Pac. 443, 163 Pac. 416; *Swicord* v. *Crawford*, 148 Ga. 719, 98 S. E. 343; *Assets Realization Co.* v. *Howard*, 211 N. Y. 430, 105 N. E. 680; *McNeill* v. *Pace*, 69 Fla. 349, 68 South. 177), but is a trust fund collected upon the stock for ratable distribution among *all* who are creditors at the date of the bank's failure. (*Barth* v. *Pock*, supra; *Woodworth* v. *Bowles*, 61 Kan. 569, 60 Pac. 331; *Farmers' State Bank* v. *Reed*, 114 Kan. 216, 217 Pac. 320; *Wingate* v. *Orchard*, 75 Fed. 241, 21 C. C. A. 315; *Austin* v. *Cochran* (Tex. Civ. App.), 2 S. W. (2d) 1015.)

We are of opinion that the surety companies, as subrogees of the United States, have no priority against the funds in the hands of the receiver of the insolvent bank on account of the stockholders' liability, for the reason that section 3466, supra, does not give them such a privileged position.

Counsel for the American Surety Company assert that its claim comes within the provisions of section 3466, supra, in that there has been a deposit of Indian funds in the bank which upon the insolvency of the bank it, as surety, had paid, and thereby became subrogated to the right of the United States to have the debt due it first satisfied in full before other creditors of the insolvent bank are paid. It appears from the record that the court allowed the claim in question as a general claim, and denied to it any preference or priority of payment. No appeal was taken from that order under section 9731, and within the time allowed by section 9732, Revised Codes of 1921. The order has become final. (*State ex rel. Rankin* v. *Banking Corp.*, 80 Mont. 49, 257 Pac. 1020; *State ex rel. Rankin* v. *Banking Corp.*, 81 Mont. 489,

264 Pac. 106.) The validity of the court's action in that regard is not properly before us on this appeal.

We have carefully considered all other contentions made by the surety companies, and find them to be without merit. For the foregoing reasons, the order appealed from is affirmed. Let remittitur issue forthwith.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.

Petition for writ of *certiorari* filed with the supreme court of the United States by the American Surety Company of New York. Writ denied by that court March 3, 1930.