# Wytheville.

## A. W. PATTERSON AND OTHERS v. OLD DOMINION TRUST COMPANY AND OTHERS.

June 18, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*T. Justin Moore,* for the appellants.

*Leake & Buford, Henry W. Oppenheimer, Wallerstein, Goode & Evans, Willis D. Miller, McGuire, Riely & Eggleston,* and *Parrish & Butcher,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

The facts of this case have been fully set forth in the former opinions of this court reported in (*Patterson* v. *Old Dominion Trust Co.*), 139 Va. 246, 257, 123 S. E. 549, and (*Patterson* v. *Old Dominion Trust Co.*), 149 Va. 597, 140 S. E. 810, 141 S. E. 759, and will not be repeated in detail in this opinion.

On April 12, 1912, Dr. R. A. Patterson died testate, seized and possessed of valuable real estate and personal property valued at approximately $852,000.00, which was devised and bequeathed to his widow and six children. To the widow was devised an undivided one-third interest in the estate for life, and an undivided one-sixth interest in the remainder of the estate was devised to each of the six children. The undivided one-sixth share of Elizabeth Patterson Crutchfield was, however, to be held in trust during her lifetime, and at her death to pass to her issue, and in the event she left no issue surviving, then to pass to the testator's other children or the issue of his children then surviving.

The clause of the will relating to Mrs. Crutchfield reads as follows:

"I give and devise one other one-sixth of my property, real, personal and mixed, to R. Fuller Patterson as trustee for my daughter, Elizabeth G. Patterson, to be held by him for the sole use and benefit of my said daughter during her life, free from the control and liabilities of any husband she may take and, at her death, this one-sixth of my property, or so much thereof as

shall then remain in the hands of the trustee, shall pass in fee simple to her children, if she leave any, and to the descendants of any child that may have died leaving issue; if my said daughter shall leave no children at her death, nor the issue of any, then this one-sixth of my property, or so much as shall then remain, shall pass to my children then living and the descendants of any who may have died leaving issue, said descendants taking *per stirpes,* except that any portion of this one-sixth of my estate which would pass to my son, James T. Patterson, under this item of my will shall pass as is provided by item 4 in regard to the one-sixth thereby devised to A. W. Patterson, trustee, and shall be governed by the provisions of said item 4 in regard to the one-sixth therein devised.

"The said R. Fuller Patterson as trustee for my daughter, and any trustee who may be substituted in his place, is authorized and empowered to sell any portion of the trust property for the purpose of changing the investment and producing a better income, when, in his judgment and that of my said daughter, it shall be judicious to do so. And if the income from the trust property shall be insufficient to provide for her proper maintenance and support, of which the trustee shall be the judge, he is authorized and empowered to sell for that purpose any portion of the trust property and use so much of the proceeds (principal and interest) as he may deem necessary; and, if in the judgment of the trustee it shall at any time be more to the interest of the trust property and all concerned therein to borrow money for the support of my said daughter than to sell for that purpose, as above authorized, he is empowered to do so, and to pledge, hypothecate or convey in trust any part of the trust property, to secure the money so borrowed. On all cases of sales or encumbrances of the trust property, as hereinbefore authorized, the trustee shall act at the request of my said daughter and with her consent, to be evidenced by her uniting with him in the deed or writing making the said sale or encumbrance; and the purchaser in such

case is not to be responsible for the proper application of the proceeds."

That clause of Dr. Patterson's will might well be termed the "stormy petrel" of Virginia litigation, for it has been the subject of controversy for years.

By mutual agreement, the devisees partitioned the real estate among themselves. The portion received by Mrs. Crutchfield in trust was unproductive, and in 1922, having received an offer of purchase from H. S. Wallerstein, she and the trustee instituted the original suit seeking a confirmation of sale to Wallerstein. In the first decision construing the will (*Patterson* v. *Old Dominion Trust Co.*), 139 Va. 246, 257, 123 S. E. 549, 552, it was held that she had the right to make the property productive. There it is said: "It is evident from the language employed that the intention of the testator was to provide liberally for the support and maintenance of his daughter."

An answer was proposed to be filed by the remaindermen, alleging that the offer of $75,000.00 of Wallerstein was an inadequate price for the property (as it was subject to a real estate agent's commission of five per cent), and requesting the court to accept their offer of $75,000.00 net. Thereupon, with the assent of the court and over the objection of the remaindermen, the trustee dismissed the suit. The dismissal of the bill and refusal to permit the answer to be filed was the question involved in the first appeal. This court held the action of the trial court to be reversible error and remanded the case, with direction that the case be reinstated and the answer proposed by the remaindermen filed.

In the meantime Wallerstein abrogated that clause of his written offer of purchase requiring a confirmation of the sale by the court, and, thereupon, the trustee and Mrs. Crutchfield conveyed the property to him for the consideration stated, payable part cash and the residue on time. At the time of conveyance Wallerstein paid $10,000.00. Subsequently, he made

various other payments totaling $11,659.54. Interest on those payments is involved in this appeal and will be hereafter discussed.

Upon the reinstatement of the suit, in obedience to the mandate of this court, the answer of the adult remaindermen was filed, together with the answer of H. W. Oppenheimer, guardian *ad litem* for Fuller, James and Martha Patterson, children of James T. Patterson, who had died subsequent to the institution of the original suit, and the answer of J. T. Patterson's executor.

The cause finally came on to be heard on the thirteenth day of May, 1926, upon the pleadings, exhibits, said offers in writing, and the depositions taken in behalf of the parties, whereupon the court set aside the deed of July 27, 1922, conveying the property to H. S. Wallerstein, and the deed of trust given by Wallerstein on the same date to secure the unpaid purchase money; directed the trustee to cancel and deliver to Wallerstein his notes for the deferred payments; retained for future consideration the supplemental Patterson offer and several proposals made by Wallerstein, and then proceeded to decree, in part, as follows:

"And the court being of opinion that the proper procedure in this case is to have the land in suit, hereinafter more fully described, offered for sale at public auction upon an opening bid of a sum in excess of the respective amounts represented by the said offers for the said tracts or parcels of land made by the said A. W. Patterson and M. C. Patterson in their own right and as executors of the estate of James T. Patterson, deceased, and by said Henry S. Wallerstein, which said offers in their respective final forms each represent the net sum of seventy-five thousand dollars ($75,000.00), with interest thereon at the rate of six per centum per annum from the twenty-seventh day of July, 1922, to date, together with such sums as are properly chargeable as taxes on said land from the said twenty-seventh day of July, 1922, to date, thereby making a

sum total of $.........." (*Patterson* v. *Old Dominion Trust Co.*), 149 Va. 597, 604, 140 S. E. 810, 812, 141 S. E. 759.

An appeal was allowed from that decree. The Special Court of Appeals, in an opinion delivered by Judge Chinn, affirmed the decree of the lower court ordering the sale of the property at public auction set aside, and annulled the deed to Wallerstein, and remanded the cause for further proceedings.

Former counsel for petitioners, Julien Gunn, Esq., having just previously been chosen judge of the Circuit Court of Henrico county, this case was then removed by order of said court, dated March 27, 1928, with the consent of all parties, to the Hustings Court, Part Two, of the city of Richmond, in accordance with the provisions of section 6176 of the Code of Virginia. That court entered a decree April 21, 1928, ordering the sale of the property at auction, "after first advertising the time, place and terms of sale at least nine times in some newspaper or newspapers published in the city of Richmond, Virginia, and by such other means, if any, as said trustee may deem expedient * * * subject to confirmation by this court." It was further provided in the decree: "* * * the said trustee shall, however, entertain and consider no bid or bids at said auction the aggregate amount of which is less than the sum of $100,000.00." The trustee, having duly advertised the sale of the property in both the Richmond *Times-Dispatch* and in the Richmond *News-Leader* and by other extensive advertisements, proceeded to sell the property at auction on the fifteenth day of May, 1928, for the sum of $126,000.00, this being the highest bid, to the Housing Investment Corporation, on the basis of one-fourth of the purchase price to be paid in cash and the balance in five years from the date of sale, with interest on the deferred installments at the rate of six per cent per annum, payable quarterly.

The court confirmed the sale by its decree entered on June 8, 1928. Certain parties, having given notice that they desired to present claims for various amounts against the *corpus* of

the trust estate realized from the sale of the land in question, the court ordered by decree, on October 25, 1928, that all such claimants file petitions setting forth their claims for participation in the distribution of the fund to the credit of the court. Six such petitions were filed, as follows:

"(1) Petition by C. L. and H. L. Denoon, Inc., and Pollard & Bagby, Inc., for an allowance of commission for their services as real estate agents in connection with the final sale of the property at the rate of five per cent on the sale price of $126,-000.00, to-wit, $6,300.00.

"(2) Petition of Elizabeth P. Crutchfield for allowance to her of the sum of $17,674.94, representing (a) claim on her part for the interest at the rate of six per cent per annum on Wallerstein's unpaid purchase money note of $65,000.00 from January 27, 1926, to September 10, 1928, amounting to $12,-176.66, plus interest at the rate of six per cent on each installment of said interest, which interest, however, was never actually paid by Wallerstein or any one else; (b) a claim for refund of certain taxes which she had paid on the land in question between July 27, 1922, and December 15, 1927, amounting to $4,141.91, plus interest on each item of taxes from the respective dates of payment.

"(3) Petition of Messrs. Meredith and Meredith for an allowance of $5,000.00 as fee for legal services rendered in this case to the trustee.

"(4) Petition of Henry W. Oppenheimer, guardian *ad litem,* for allowance by the court of the sum of $2,500.00, as fee to him for his services as guardian *ad litem* for certain infant defendants.

"(5) Petition of Henry S. Wallerstein for an allowance to him of the sum of $31,957.16, representing the repayment to him of the cash payment of $10,000.00 which he paid to the substituted trustee in connection with the sale which was set aside by the court, plus interest on the said $10,000.00, from date of payment, plus the amount of six semi-annual interest

notes, amounting to $11,659.54, given and paid by said Wallerstein on the $65,000.00 deferred purchase money, plus interest on said interest notes from the respective dates of payment, in addition to which said Wallerstein asked for repayment to him of certain taxes, amounting to $2,561.84, paid by him on the land in question between July 19, 1922, the date of the deed to him, and November 30, 1925, plus interest on each item of taxes so paid from date of payment, plus the cost of recording his deed of bargain and sale and abstract of title, amounting to $315.00, plus interest on these last items from dates of payment.

"(6) Petition of Joseph M. Hurt, Esq., for an allowance of $300.00 for legal services as counsel for the trustee in connection with the institution and conduct of this suit. The defendants did not object to this allowance, and so the court entered an order on January 15, 1929, allowing said counsel for the trustee this amount."

The court, having taken evidence orally with respect to the claims respectively of the real estate agents and of counsel fees asked for by Messrs. Meredith and Meredith and Henry W. Oppenheimer, entered final decree in this cause on February 27, 1930, which is the decree now appealed from, in which the court (1) allowed out of the *corpus* the real estate agents as commission for their services the sum of $3,780.00, this being three per cent on the sale price of $126,000.00, but provided that the trustee should be entitled to a credit against this allowance of $3,750.00, which was unlawfully paid said agents on July 27, 1922, in connection with the attempted sale to Wallerstein; (2) allowed out of the *corpus* Mrs. Crutchfield's claim to the extent of $9,614.83—thus in effect allowing her claim of $12,176.66 for interest on Wallerstein's $65,000.00 note from January 27, 1926, to September 10, 1928, but disallowing her claim for refund of taxes and requiring that she pay into the *corpus* of the trust estate the principal amount of taxes paid by Wallerstein, amounting to $2,561.84, but with-

out charging her with interest on this amount; (3) allowed Messrs. Meredith and Meredith's claim in full for $5,000.00, but ordered that $2,000.00 should be charged against the life tenant, Mrs. Crutchfield; (4) allowed, out of the *corpus,* to the guardian *ad litem,* Henry W. Oppenheimer, Esq., $2,000.-00 as fee for his services; and (5) allowed out of the *corpus* Wallerstein's claim in full, refunding to him not only the principal amount of $10,000.00 paid by him and the six interest notes on his $65,000.00 note, which had been paid by him, amounting to $11,659.54, but also interest at six per cent on the $10,000.00, and said six interest payments and all taxes paid by him, amounting to $2,561.84, plus interest on said taxes from dates of payment.

■ The first error assigned is that the court erred in allowing C. L. and H. L. Denoon, Inc., and Pollard & Bagby, Inc., commissions in the sum of $3,780.00, subject to the credit stated in the decree.

There is no merit in the first assignment of error. The final sale of the real estate was made under a decree of the court by State Planters Bank and Trust Company, substituted trustee for Elizabeth Patterson Crutchfield, under the will of Dr. Patterson. The decree directs the trustee to sell the property at public auction, "after having first advertised the time, place and terms of sale at least nine times in some newspaper or newspapers published in the city of Richmond, Virginia, *and by such other means, if any, as said trustee may deem expedient."* (Italics added.) It was the duty of the trustee to exert every reasonable effort to make the property bring the highest price possible. The employment of reputable real estate agents conversant with such transactions was within the terms of the decree. The amount of this compensation was a question for the court, to be determined by the exercise of a reasonable discretion. The fact that the trust estate was enriched to the extent of $51,000.00—the difference between Wallerstein's of-

fer and the sale price—is conclusive proof that the trustee acted wisely in putting forth the effort it did.

The second assignment of error is that the court erred in allowing Mrs. Crutchfield the sum of $9,614.82, or any part thereof, out of the *corpus* of the trust fund. That Mrs. Crutchfield was, under the plain provisions of Dr. Patterson's will, entitled to receive from the trust estate an income befitting her station in life cannot be questioned. That she has not done so is self-evident. Judge Chinn aptly describes her situation: "The life tenant has just cause to make the complaint that, although about fifteen years have elapsed since her father's death, little effect has yet been given to his intentions in providing for her." (*Patterson* v. *Old Dominion Trust Co.*), 149 Va. 597, 616, 140 S. E. 810, 816, 141 S. E. 759.

While we are not prepared to unqualifiedly endorse the trial court's conclusion, we are of opinion that substantial justice has been meted out, and, therefore, hold that the second assignment of error is without merit.

The third assignment of error challenges the action of the trial court in allowing Meredith and Meredith counsel fees in the sum of $3,000.00, payable out of the *corpus* of the estate. The record discloses that Meredith and Meredith were counsel for the trustee from the inception of this litigation; that they participated in three or four hearings in the lower court; that they three times appeared as counsel in this court. The law is well settled that a trustee is vested with authority to employ counsel, if necessary, for the protection or preservation of the trust estate. The amount of counsel's compensation rests in the sound discretion of the court having jurisdiction of the subject matter. In the case at bar the lower court was thoroughly acquainted with the services rendered by petitioners. We do not find anything in the record to lead us to the conclusion that the fee allowed is exorbitant, and, therefore, we cannot hold there has been an abuse of the court's discretion in allowing counsel fees.

The fourth assignment of error is that the court erred in allowing H. W. Oppenheimer a fee of $2,000.00, payable out of the *corpus* of the trust fund for legal services as guardian *ad litem* for the infant defendants.

The general rule in regard to the allowance of counsel fees is thus stated in *McCormick* v. *Elsea*, 107 Va. 475, 59 S. E. 411, 412:

"Except in rare instances, the power of a court to require one party to contribute to the fees of the counsel of another party, must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the common benefit of all; but the discretion invested in the court should never be exercised in a case where the interests of the party, whose fund is sought to be charged, are antagonistic to the party for whose benefit the suit is prosecuted.

"The rule is thus stated in 4 Cyc. 1013, 1014: 'While there is, strictly speaking, no lien on any fund which is within the custody or control of the court, the court may award attorney's fees out of the fund. Thus, counsel for a representative may receive remuneration out of the estate, especially if he procures property for the estate, but counsel for a beneficiary cannot claim payment out of the estate, though he may be paid out of his client's share or from the portions of those beneficiaries who have joined in the proceedings, or have acquiesced in the attorney's exertions.' See also *Roller* v. *Paul*, 106 Va. 214, 219, 55 S. E. 558."

In *Stuart* v. *Hoffman*, 108 Va. 311, 61 S. E. 757, 758, Judge Keith affirms the above pronouncement and then says:

"To that statement of the law we may add that a fee would properly be allowed where the services of counsel had 'preserved' a fund to be shared with those in like interest and unrepresented by counsel, but this court has not as yet required a party represented in a suit by counsel to contribute to the pay-

ment of the fees of counsel other than his own engaged in the suit. See also *Roller* v. *Paul,* 106 Va. 214, 55 S. E. 558."

In the absence of peculiar facts, such as the creation of a fund which enures to the common benefit of all concerned, the allowance of guardian *ad litem* fees is with us regulated by statute. Section 6098 provides: "When, in any case, the court or judge is satisfied that the guardian *ad litem* has rendered substantial service to the estate of an infant or insane defendant, it may allow him reasonable compensation therefor, and his actual expenses, if any, to be paid out of the estate of such defendant."

The guardian *ad litem* relies on the case of *Pettus* v. *Hendricks,* 113 Va. 326, 74 S. E. 191, to sustain the court's decree. That case involved the question as to which of three sets of claimants was entitled to the proceeds of a certificate of insurance in a mutual benefit association. The heirs of the decedent were impleaded by the association and, as some of them were infants, a guardian *ad litem* was assigned to defend their interests. The court's decision was adverse to the heirs, and the question arose as to the payment of counsel fees, including that of the guardian *ad litem.* On this phase of the case Judge Keith, in delivering the opinion of the court (*Pettus* v. *Hendricks,* 113 Va. 326, at p. 331, 74 S. E. 191, 193), said:

"This suit was brought in unquestioned good faith. There were, as we have seen, three sets of claimants to the fund for which the firemen's association confessed its liability. In order to have the controversy so determined that it might safely pay over the fund, this suit was brought, and the guardian *ad litem* of the infants made a party defendant. The litigation was not rendered necessary by any default on the part of the firemen's association, but by the conflicting claims of the parties defendant. If the infant defendants had had any estate which could have been made responsible for the costs, the fee to the guardian *ad litem* would have been properly charged upon it, but the presence of the wards in court, by guardian *ad litem,* being

necessary, and they having no estate which the court could reach, the fee became a proper charge in the first instance upon the fund to be administered."

That case is clearly distinguishable from the case at bar on several grounds: First, the allowance was only $25.00 and was taxed as a part of the court costs; second, the allowance was made without taking into consideration the provisions of section 3255 of the Code of 1887 (now 6098 of the Code); third, it appeared that the infants had no estate "which the court could reach." The record in the present suit discloses that the infants have a one-sixth interest in remainder, which is worth approximately $40,000.00. That they will ultimately receive their interest in the trust estate is, we think, conclusively shown by certain facts appearing in the record. The statute provides (section 5147 of the Code) that such an estate is capable of alienation or devise. Our conclusion is that the estate to which the infants are ultimately entitled is such an estate as is contemplated by section 6098, and it was error for the court to decree the payment of the guardian *ad litem's* fee out of the *corpus* of the trust estate. In view of the fact that the fee was based on the theory that the same should be paid out of the *corpus* and not fall upon the infants, we are of opinion that the infants should be given an opportunity, if so advised, to question the reasonableness of the fee finally allowed the guardian *ad litem*.

■ The fifth assignment of error is: "It was error for the court to have allowed that portion of Wallerstein's claim consisting of interest on the principal amount of $10,000.00 paid by him, interest on his six interest notes paid by him, and interest on taxes paid by him."

It is necessary, in discussing this assignment of error, to advert to the original transaction between the trustee, under the will of Dr. Patterson, Mrs. Crutchfield, the beneficiary, and Wallerstein. In that clause of the will (heretofore quoted) creating the trust, the original trustee or any substituted trus-

tee was authorized to sell the trust property for the purpose of changing the investment and producing a better income, "when, in his judgment and that of my said daughter, it shall be judicious to do so." The trustee was further authorized to use so much of the proceeds of sale as in his judgment was necessary for the proper maintenance and support of Mrs. Crutchfield. Notwithstanding the broad powers conferred by the will upon the trustee, in the contract of sale, this provision was inserted in the contract: "This offer is made subject to acceptance or rejection of the court." In view of that stipulation, suit was instituted.

After the appearance in court of the remaindermen and their offer of purchase in the sum of $75,000.00, as set forth in their proposed answer, the trustee, on the advice of C. V. Meredith, its counsel, sought and obtained a dismissal of the cause. Then it was that the contract was changed and the property was conveyed to Wallerstein, who made the payments he is now seeking to recover, with interest thereon.

Unless it can be demonstrated that Wallerstein has been guilty of moral turpitude—as charged by appellants—we are unable to perceive why he should not be permitted to recover his money with interest thereon. Though the dismissal of the original suit was held by this court to be reversible error, an examination of the evidence in support of the claim of Meredith and Meredith demonstrates that the trustee, Mrs. Crutchfield, and Wallerstein were guided in all of their actions by Mr. C. V. Meredith, an eminent lawyer, above reproach.

When, pursuant to the mandate of this court, the original suit was reinstated, the trial court retained the purchase price and made Wallerstein's offer of purchase the basis of the opening bid at the public sale.

In discussing a similar contention made by appellants on the second appeal, Judge Chinn said:

"Appellants assert in their petition for appeal that if the property is sold at auction 'either Wallerstein must lose the

amount in interest and taxes paid by him, * * * or the life tenant made to refund to Wallerstein the amount so paid by him, or the trustee forfeit the amount of his wrongdoing.'

"With this proposition we cannot agree. It is self-evident that the amount expended by Wallerstein on account of taxes and interest on his deferred payments was for the benefit of the trust, and so, upon every principle of equity and justice, he should be reimbursed therefor out of the proceeds of the trust property when sold under the supervision of the court."

With that conclusion we are in thorough accord. However, it is contended by counsel for appellant that to "reimburse" Wallerstein does not mean that he should be paid interest on the money withheld from him by the trial court or that he should receive interest on the sums expended by him in the payment of taxes.

The decision of this court in *Parker* v. *Stephenson,* 127 Va. 431, 104 S. E. 39, we think, fully answers the contention of counsel. In that case a suit was brought to provide income for an infant. It further appeared that the property was owned one-third by the mother and two-thirds by the infant. The court ordered in the proceedings that a deed of trust be put on the property and ordered a special commissioner to convey the infant's interest, the mother uniting in the deed. There was default in the deed of trust and it was sold to the defendant at a trustee's sale. Subsequently, the infant attacked the whole proceeding and demanded the return by the defendant of the property. This court held that the original proceedings conveying in trust the infant's interest were void, and ordered a rescission, but before the rescission could be consummated the court stated the purchaser was entitled not only to his purchase money, but to the interest from the time that the various payments were made, using the following language, page 445 of 127 Va., 104 S. E. 39, 43:

"Where the situation is such that equity can be done between parties, the infancy of a complainant does not exclude him

from the operation of the maxim that he who asks equity must do equity. It appears from the record that the property in controversy has greatly increased in market value, so that the court has under its control the means of adjusting the equities of the parties. The deed of trust and the sale thereunder, so far as they affect the interest of the infant complainant, should be set aside and annulled, and his interest in the property should be charged in favor of the appellee with two-thirds of the purchase money paid by the appellee therefor, with legal interest thereon from the date of its payment by the appellee. The appellee should also have credit for two-thirds of the enhanced market value of the property by reason of any permanent improvements placed thereon by him since he became the purchaser thereof, and two-thirds of all sums paid by him for insurance premiums and taxes on the property since he became such purchaser, with legal interest on the sums paid for such premiums and taxes from the dates of their respective payments, and he should be charged with two-thirds of the rents and profits of said property since he became the purchaser thereof, with legal interest on such sums from the respective dates on which they were received."

The fifth assignment of error is without merit.

Mrs. Elizabeth Patterson Crutchfield makes the following assignments of cross-error:

"(1) The lower court erred in refusing to allow the whole of the claim, relating to both interest and taxes, which was asserted by her;

"(2) The lower court erred in requiring any portion of the fee of Meredith & Meredith to be borne by this appellee, and in failing to require the whole of said fee to be paid out of the *corpus* of the trust estate."

The first cross-assignment of error has been disposed of in the discussion of the second assignment of error of appellants, and is without merit.

As to the second cross-assignment of error: From the

testimony of Mr. Bernard Meredith it is manifest that his firm was representing Mrs. Crutchfield independently of any contract with the trustee. Mrs. Crtuchfield is *sui juris;* if she is indebted to her attorneys they have their recourse against her in the proper forum. There is no pleading in this cause properly raising any question between the parties, and therefore, the court exceeded its authority when it entered judgment against Mrs. Crutchfield. Appellees having substantially prevailed in this court, they will be awarded their costs.

The decree of the lower court will be affirmed in part and reversed in part, as indicated in this opinion, and the cause will be remanded for further proceedings not in conflict with the views expressed in this opinion.

*Affirmed in part; reversed in part.*

Epes, J., concurring in part and dissenting in part.

I am not able to concur in the opinion of the majority of the court with reference to the sum which the court ordered to be paid to Mrs. Crutchfield.

Dr. R. A. Patterson died in 1912. The material parts of "Item III" of his will, which for more ready reference I have divided into subdivisions a, b, c, d and e, read as follows (italics mine) :

(a) "I give and devise one other one-sixth of my property, real, personal and mixed, to R. Fuller Patterson as trustee for my daughter, Elizabeth G. Patterson, to be held by him for the sole use and benefit of my said daughter during her life, free from the control and liabilities of any husband she may take, and at her death, this one-sixth of my property, *or so much thereof as shall then remain in the hands of the trustee* shall pass to certain remaindermen therein designated.

(b) "The said R. Fuller Patterson as trustee for my daughter, and any trustee who may be substituted in his place, is

authorized and empowered to sell any portion of the trust property for the purpose of changing the investment and producing a better income, when, in his judgment and that of my said daughter, it shall be judicious to do so.

(c) "And if the income from the trust property shall be insufficient to provide for her proper maintenance and support, *of which the trustee shall be the judge,* he is authorized and empowered to sell for that purpose any portion of the trust property and use so much of the proceeds (principal and interest) as he may deem necessary;

(d) "And, if in the judgment of the trustee it shall at any time be more to the interest of the trust property and *all concerned* therein to borrow money for the support of my said daughter than to sell for that purpose, as above authorized, he is empowered to do so, and to pledge, hypothecate or convey in trust any part of the trust property, to secure the money so borrowed.

(e) "In all cases of sales or encumbrances of the trust property, as hereinbefore authorized, the trustee shall act at the request of my said daughter and with her consent, to be evidenced by her uniting with him, in the deed or writing making the said sale or encumbrance." * * *

Elizabeth G. Patterson married E. M. Crutchfield. The trustee, R. Fuller Patterson, resigned and the court, on June 7, 1915, appointed Old Dominion Trust Company as substituted trustee, which in time was merged into the State and City Bank and Trust Company, which became and is now the substituted trustee under Item III of Dr. Patterson's will.

During the period June 7, 1915, to August 15, 1921, the income-bearing property in the hands of the trustee had been increased by receipts from the executor of R. A. Patterson and the sale of real estate belonging to the trust estate, and, on July 23, 1920, was thus increased by notes aggregating $25,000.00.

As shown by the report of the trustee, the *corpus* of this

trust estate consisted on August 15, 1921, of the following property: (1) Stock of the par value of $21,600.00, the appraised value of which was much in excess of the par value thereof; (2) bonds and notes of the par value of $73,516.66; (3) four parcels of improved real estate in the city of Richmond of the "book value" of $10,450.00; and (4) the unimproved real estate, aggregating approximately twenty-five acres, for the sale of which this suit was brought in 1922.

The gross income received by the trustee from the trust estate, the net income (after payment of all taxes and expenses incident to the administration of the trust), and the amount paid to Mrs. Crutchfield during the period June 7, 1915, to August 15, 1922, were as shown below:

| Year Ending | Gross Income | Net Income | Amt. of Income Disbursed to Mrs. Crutchfield |
|---|---|---|---|
| June 7, 1915, to | | | |
| August 15, 1916.. | $4,627.52 | $3,493.71 | $2,933.59 |
| August 15, 1917.. | 5,355.66 | 3,624.33 | 4,019.89 |
| August 15, 1918.. | 5,295.94 | 3,735.01 | 3,775.00 |
| August 15, 1919.. | 5,805.46 | 3,847.72 | 4,206.01 |
| August 15, 1920.. | 5,919.76 | 3,738.12 | 3,400.00 |
| August 15, 1921.. | 7,543.90 | 5,473.09 | 4,609.00 |
| August 15, 1922.. | 7,445.43 | 5,009.47 | 6,286.85 |

It, therefore, appears that in the fiscal year in which this suit was brought Mrs. Crutchfield received net income from this trust estate of over $6,000.00, and the evidence in this suit further shows that, eliminating any sums which the trustee paid to Mrs. Crutchfield during the period 1922-1927 from what is erroneously conceived to be income from the proceeds of sale of the twenty-five acres of real estate involved in this suit, Mrs. Crutchfield received from the trust estate in each fiscal year (year ending August 15th) a net income during this period of $5,500.00 or more.

During the period August 15, 1915-1922, the trustee does not appear to have been of the opinion that Mrs. Crutchfield was receiving a net income insufficient for her proper maintenance and support, or that her circumstances made it necessary or proper for it to exercise its power under subdivision "c" of Item III of the will of Dr. R. A. Patterson and make to her any payments from the *corpus* of the estate for her maintenance and support. Certainly the trustee made no payments to her from the *corpus* of the estate, and there is no intimation that Mrs. Crutchfield had ever requested that payments be made to her from the *corpus* of the estate.

However, the trustee, at the request of Mrs. Crutchfield, in order to convert it into income-bearing securities, had been trying for some time to find a purchaser for the twenty-five acres of unimproved real estate involved in this suit, which lies partly within and partly without the corporate limits of the city of Richmond, and to this end had listed this property for sale with a number of real estate agents.

Finally, on May 19, 1922, it received through C. L. & H. L. Denoon, real estate agents, an offer from Henry S. Wallerstein to purchase this twenty-five acres of land for $75,000.00, payable $10,000.00 cash, and the residue in five years from August 1, 1922, with interest at six per cent per annum, payable semiannually. The offer stated that "this offer is made subject to acceptance or rejection of the court."

Old Dominion Trust Company, the trustee, at the request of Mrs. Crutchfield, accepted this offer, and on June 6, 1922, filed its bill in the Circuit Court of Henrico county, seeking to have its action ratified and confirmed by the court. All the remaindermen, some of whom were infants, Mrs. Crutchfield and Mr. Wallerstein were made parties defendant to the bill.

The bill alleges that this property is non-income bearing and should be sold so as to convert it into income bearing property; that at the request of Mrs. Crutchfield the trustee had been trying for some time to sell the property; that the offer

of Wallerstein is a good price for the property and should be accepted; that a "hardship" results to Mrs. Crutchfield "from this property not having been sold, both with respect to the heavy taxes she has to pay and also with respect to the long time during which she has enjoyed no income from this portion of her trust estate." It further alleges that the trustee is "of the opinion that the will of R. A. Patterson * * *, and the above mentioned request of Elizabeth Patterson Crutchfield, give to your orator the right to sell and convey the said real estate without the aid or intervention of any court, but since the amount involved is so large, your orator deemed it expedient to ask for the said advice of this honorable court in this matter."

With the bill is filed, as an exhibit, a letter from Mrs. Crutchfield addressed to Old Dominion Trust Company, in which she requests that it accept Wallerstein's offer, and states that she is ready to join in a deed executed to him in pursuance thereof. This letter reads, in part, as follows:

"During the period from the death of my father until the time when you were substituted as trustee, my income from the trust estate left me by my father, was extremely small, and since the date of your qualification as trustee, it has likewise been small in proportion to the value of the trust estate." * * *

"I wish to point out further that the above mentioned * * * unimproved real estate constitutes the chief portion of the trust estate, and for practically seven years now I have received no income whatever from the same, and, in addition thereto, have had to pay out of my income heavy taxes thereon. At the present time I am paying taxes on the property at the rate of approximately a thousand dollars a year.

"I call your attention to the wording of the said Item III of my father's will, which shows that this trust estate was clearly intended to be one which should produce an income for me, the said will providing that if the income from the trust estate is insufficient to provide for me proper maintenance and

support, the trustee is authorized and empowered to sell any portion of the trust property and to use the proceeds, both principal and interest, for the purpose of providing for my maintenance and support, and it is further provided that in all cases of sale, the trustee shall act at my request and with my consent.

"This trust was clearly meant to provide an income for me, and for practically seven years now the chief bulk of the trust estate has produced no income whatever, and, on the other hand, I have had to pay heavy taxes thereon, legal fees, trust commissions, court fees and heavy repairs to real estate, thus reducing my income by at least two-thirds of its normal value. For these reasons I desire to state most emphatically that I desire this property sold * * * and that this portion of the trust estate be thereby made to produce an income, and that I be relieved from the hardship of having to continue paying taxes on this property without receiving any income therefrom."

The bill prays that the acceptance by the trustee of Wallerstein's offer be ratified and confirmed; that it be authorized to convey the property to Wallerstein and pay C. L. & H. L. Denoon $3,750.00 for their services in making the sale; that it be authorized to pay the costs of this suit; that a reasonable attorney's fee be allowed its counsel, and "that all such other further and more general relief may be granted your orator as the nature of its case may require, or to equity seem meet."

Neither the trustee in its bill nor Mrs. Crutchfield, in her letter filed therewith, alleges that the net income being received by her is insufficient for her proper maintenance and support, or that any payment from the *corpus* of the trust estate should be made to her for that purpose, nor can the prayer of the bill be construed to ask that the trustee be authorized to pay to Mrs. Crutchfield any sum from the *corpus* of the trust estate.

Plainly, both the trustee and Mrs. Crutchfield, in accepting Wallerstein's offer and instituting this suit, were acting under subdivision "b" of Item III of Dr. Patterson's will, and had

no intention of invoking the exercise of the power conferred upon the trustee under subdivision "c" thereof.

When the trustee discovered that the remaindermen proposed to file answers opposing the acceptance of Wallerstein's offer on the ground that the price was inadequate, the trustee and Mrs. Crutchfield moved the court to dismiss the bill. A. W. Patterson, M. C. Patterson and James T. Patterson, three of the remaindermen, appeared and opposed the motion to dismiss the bill and asked leave to file their answer.

The answer tendered by these three remaindermen asserted that the Wallerstein offer should not be confirmed because it was "entirely too low," and "much below the true market value of this property." The respondents further assert that they have no disposition to interfere unduly with the sale of Mrs. Crutchfield's trust estate, and that they fully appreciate her position in wanting to convert unproductive land into interest-bearing investment, and that to this end they offer to purchase the property at $75,000.00, payable $5,000.00 cash and the residue payable five years after date, with interest at six per cent per annum, payable semi-annually. The answer specifically asked that the Wallerstein offer be disapproved and rejected; that their offer be accepted, and that, as the sale is for the sole benefit of the life tenant, the costs incident to this suit be ordered paid by Mrs. Crutchfield and not out of the *corpus* of the estate.

The court entered its decree on July 21, 1922, refusing to permit this answer to be filed, and dismissed the bill upon the motion of the trustee, in which Mrs. Crutchfield and W. Pernet Patterson, one of the remaindermen, joined. Thereupon, James T. Patterson, A. W. Patterson, and M. C. Patterson immediately gave notice of their intention to appeal.

Six days after the decree dismissing the bill was entered, Wallerstein having receded from the provision that his offer was made "subject to acceptance or rejection of the court," the Old Dominion Trust Company, by deed dated July 27, 1922, in

which Mrs. Crutchfield joined, conveyed the property here in question to Wallerstein at the price and upon the terms mentioned in his offer, and Wallerstein paid to the trustee $10,000.00 in cash and executed and delivered to the trustee his note for $65,000.00, payable five years after date, with interest at six per cent per annum, payable semi-annually.

Subsequently, James T. Patterson, M. C. Patterson and A. W. Patterson prosecuted their appeal to this court from the decree dismissing said bill, and in an opinion handed down on June 12, 1924, this court reversed the decree and remanded the cause with direction to the trial court to reinstate the cause and permit the appellants to file the answer which they had tendered. (See *Patterson* v. *Old Dominion Trust Company,* 139 Va. 246, 123 S. E. 549.)

When the cause was reinstated, A. W. Patterson and M. C. Patterson filed the answer, which had theretofore been tendered by them and James T. Patterson, who had died in the meantime, and the court entered its decree permitting the same to be filed, and ordering that it be treated as a cross-bill.

The three infant remaindermen, Fuller Patterson, James Patterson and Martha Patterson, then filed their answer and their amended and supplemental answer, both by Henry W. Oppenheimer, their guardian *ad litem.* In their amended and supplemental answer they set forth the deed made by Old Dominion Trust Company and the circumstances under which it was executed and delivered to Wallerstein, and that the property has greatly enhanced since July 21, 1922, and is now worth approximately $125,000.00, and ask that the deed to Wallerstein be set aside and declared null and void, and that the cause be then proceeded in as it would have been proceeded in had the suit not been dismissed and had the deed to Wallerstein not been executed; that the offer of Wallerstein to purchase the property be rejected, and that the court order the property offered for sale at public auction, but put the remaindermen,

who had offered to purchase the property, upon terms to treat their offer as a binding opening bid.

Answers were also filed by other parties in interest, but they need not be noticed here.

The offer of $75,000.00 made by the Pattersons was a better net price by $3,750.00 than the offer made by Wallerstein, due to the fact that it had been procured by real estate agents to whom there was to be paid a commission of $3,750.00, and before any further decree was entered on the merits of the cause, Wallerstein offered to pay the further sum of $3,750.00 for the property so as to make the sale to him equally as good a proposition as a sale to the Pattersons at their offer of $75,000.00.

Depositions were then taken on the issues presented by the bill and answers.

No testimony was introduced for the purpose of showing, or tending to show, that the net income being received by Mrs. Crutchfield was insufficient for her proper support and maintenance, or suggesting the propriety of the trustee making any payments to her from the *corpus* of the estate for that purpose.

By its decree entered May 13, 1926, the court set aside and annulled the deed from Old Dominion Trust Company to Wallerstein and the deed of trust executed by Wallerstein to secure his note for $65,000.00, given for the deferred payments, and ordered the trustee to return to Wallerstein "such of the notes, both principal and interest, drawn by Henry S. Wallerstein, representing deferred installments of purchase money * * * remaining unpaid in its possession." The decree further ordered that the property here involved be offered for sale at public auction by a commissioner of the court, and that the offer of the Pattersons and of Wallerstein be retained "for further consideration and action by it, in the event that a higher bid shall not be made for said real estate," and that, as the offer of the Pattersons and of Wallerstein (in its final form) each represents the net sum of $75,000.00, with interest at six

per cent per annum from July 27, 1922, plus taxes on the land from July 27, 1922, no bid should be received for less than the aggregate of these sums.

From this decree A. W. Patterson and M. C. Patterson, executors under the will of James T. Patterson, deceased, appealed to this court. In an opinion handed down by the Special Court of Appeals on December 22, 1927, this decree was affirmed, and the cause remanded for further proceedings. (See *Patterson* v. *Old Dominion Trust Co.*, 149 Va. 597, 140 S. E. 810, 141 S. E. 759.)

While this appeal was pending, the city of Richmond condemned 1.474 acres of this land for Malvern avenue and a narrow strip for the widening of Patterson avenue at the sum of $10,657.54. The net proceeds from the condemnation of these two parcels of land was paid over to the trustee after the sale at auction, hereinafter mentioned, was confirmed.

When the case was remanded it was transferred to Hustings Court, Part Two, of the city of Richmond, which on April 21, 1928, entered its decree ordering its commissioner to offer this land, less that condemned by the city of Richmond, for sale at an opening bid of $100,000.00.

The property, less that condemned by the city, was put up at auction under this decree on May 15, 1928, and was sold to Housing Investment Corporation at $126,000.00, $31,500.00 cash and the residue, $94,500.00, payable five years after date, with interest at six per cent per annum from May 15, 1928, payable quarterly. This sale was confirmed by the court by decree entered June 12, 1928, and the terms thereof have been complied with, and a deed executed to the Housing Investment Corporation.

During the pendency of this litigation Wallerstein paid to the trustee $10,000.00 on July 27, 1922, as the cash payment on the purchase he supposed he had made, and also the first six semi-annual installments of interest falling due on his $65,000.00 note, *i. e.*, interest from July 27, 1922, to July 27,

1925, aggregating $11,659.54. He also paid State, county and city taxes on the property for the years 1922-1925, aggregating $2,561.84.

After the confirmation of the sale to Housing Investment Corporation, Wallerstein petitioned the court to order these sums repaid to him by the trustee, together with interest at six per cent per annum thereon from the time he paid them, and the court by its decree entered March 12, 1929, ordered the repayment to Wallerstein of the following sums: (a) Cash payment of $10,000.00, with interest from July 27, 1922, to June 29, 1929, at six per cent per annum; (b) interest payments made by him, as follows, with interest at six per cent per annum from date of payment until repaid to him:

$1,887.50 with interest from Jan. 29, 1923
1,950.00 with interest from July 27, 1923
1,952.94 with interest from Feb. 5, 1924
1,950.00 with interest from July 31, 1924
1,959.10 with interest from Feb. 24, 1925
1,960.00 with interest from Sept. 2, 1925

$11,659.54

(c) taxes paid by Wallerstein, as follows, with interest at six per cent per annum from date of payment till repaid:

$ 405.21 with interest from July 27, 1923
49.75 with interest from Nov. 30, 1923
127.58 with interest from Apl. 28, 1924
494.80 with interest from May 5, 1924
49.75 with interest from Nov. 29, 1924
43.47 with interest from Nov. 30, 1924
1,341.53 with interest from Apl. 21, 1925
49.75 with interest from Nov. 30, 1925

$2,561.84

The court further decreed that all the sums ordered to be repaid to Wallerstein, including the interest thereon, be charged against the *corpus* of the trust estate.

Upon the execution of the deed to Wallerstein on July 27, 1922, the trustee paid to C. L. and H. L. Denoon $3,750.00 as commissions on the sale. The net income received from the

investment of the residue of Wallerstein's cash payment of $10,000.00 and from the interest payments made by Wallerstein are included in the gross income received by the trustee and the net income paid by the trustee to Mrs. Crutchfield during the annual fiscal periods 1923-1926, as will appear from the below statement.

| Year Ending | Gross Income | Interest paid by Wallerstein included in gross income | Net Income | Amount of income disbursed to Mrs. Crutchfield |
|---|---|---|---|---|
| Aug. 15, 1923...... | $12,365.44 | $ 3,837.50 | $10,086.80 | $10,097.20 |
| Aug. 15, 1924...... | 12,017.42 | 3,902.94 | 10,088.99 | 10,094.81 |
| Aug. 15, 1925...... | 10,281.16 | 1,959.10 | 8,136.54 | 7,739.01 |
| Aug. 15, 1926...... | 10,612.12 | 1,960.00 | 7,960.26 | 8,264.50 |
| Aug. 15, 1927...... | 9,649.93 | ............ | 6,689.89 | 6,673.72 |
| Aug. 15, 1927, to Sept. 1, 1928..... | 10,589.63 | ............ | 5,379.29 | 5,163.64 |

The gross income for the last period includes $1,455.46 income received from the bank on the cash payment made by Housing Investment Corporation and the first quarterly installment of interest on its $94,500.00 note, and the charges against gross income include $1,236.92 for unpaid taxes for the years 1925 and 1926 on the real estate involved in this suit. All the costs of this suit appear to have been charged by the trustee to the *corpus* of the trust estate.

On October 30, 1928, Mrs. Crutchfield filed her petition in this suit, which reads as follows:

"Your petitioner, Elizabeth Patterson Crutchfield, respectfully represents:

"1. That she is the life tenant of the property involved in the above styled suit.

"2. Your petitioner is advised, believes and claims that she was entitled on September 10, 1928, to receive from the said substituted trustee the sum of seventeen thousand six hundred

and seventy-four dollars and ninety-five cents ($17,674.95), this amount being fully set forth and described in a statement made and prepared by A. M. Pullen & Company, certified public accountants, which is marked E. P. C. Exhibit A, and attached hereto and made a part hereof. Your petitioner specifically sets forth that the aforesaid claim is made without prejudice to any other rights or claims that she may have, and shall in no way affect her right to file an additional claim at any time in the future against the *corpus* of this estate.

"Wherefore, your petitioner prays that she may file this petition and that this court will direct the said substituted trustee to pay her the said sum of seventeen thousand six hundred and seventy-four dollars and ninety-five cents ($17,674.95)."

The statement referred to in this petition, marked "E. P. C. Exhibit A," makes it clear just what Mrs. Crutchfield is claiming. The statement is entitled "Amounts due Mrs. Elizabeth Patterson Crutchfield for accrued income and advances made on 25.04 acres Patterson avenue property from July 22, 1922, to September 10, 1928;" and includes two classes of items— one class headed "Accrued Income" and the other class headed "Advances." Under the heading "Accrued Income" are entered seven items, each item described as "S/A Interest on $65,000.00 note of Henry S. Wallerstein." Six of these items are for $1,950.00 each, and are listed as having fallen due at six months' intervals beginning January 27, 1926. The seventh item is for $476.66, listed under date of September 10, 1928, and represents six per cent interest on $65,000.00 from July 27, 1928, to September 10, 1928. The seven items (without any interest thereon) aggregate $12,176.66. Interest on these seven items is added from the respective dates under which they are listed to September 10, 1928, and the "total accrued income and interest thereon" is listed as $13,139.96. Under the heading "Advances" are listed the taxes on the Patterson avenue property paid by the trustee for the years 1922-1927, inclusive, aggregating $4,547.12, which, with interest from the

respective dates of payment thereof to September 10, 1928, amount to $5,064.73. From the amount of these taxes is deducted the amount of taxes ordered to be refunded to Wallerstein, $405.21, which with interest to September 10, 1928, amount to $529.74, making the net "total advances and interest thereon" $4,534.99.

No answer is filed by any party to this petition, but A. W. Patterson and M. C. Patterson, in their own right and as executors and trustees under the will of James T. Patterson, deceased, and also the guardian *ad litem* for the infant remaindermen, opposed the granting of the prayer of the petition.

Mrs. Crutchfield, in her petition, claims these sums as *income* of the trust estate improperly withheld from her. Neither in this petition nor anywhere else does she or the trustee allege that the income being received by her is insufficient to properly maintain and support her, or that she is entitled to have any part of the *corpus* of the trust estate paid to her for such purpose. The reports of the trustee, hereinbefore quoted from, show the amount of the gross income of the trust estate and the amount of net income disbursed to her, but there was no evidence introduced to show that this, exclusive of all income from the Wallerstein cash and notes, has been insufficient for her proper maintenance and support.

It is apparent from the record that in paying to Mrs. Crutchfield the income received from the cash payment made by Wallerstein and the interest sums paid by him, the trustee was acting upon the assumption that it was paying to her *income* which she was legally entitled to demand, regardless of the size of her income, and at no time has assumed to pay to her any sum from the *corpus* of the estate in the exercise of its power under subdivision "c" of Item III of Dr. Patterson's will.

The court, by its decree of March 12, 1929, decreed as follows, with reference to the claim of Mrs. Crutchfield:

"(1) That the said petitioner's claim for interest on $75,-

000.00 (so far as not already paid her), amounting to the principal sum of $12,176.66, should be and is allowed without interest, and the said petitioner is also entitled to and shall retain all interest which has been paid to her during the pendency of this litigation; (2) that in view of the foregoing provision, the said petitioner's claim for the principal sum of $4,141.91, on account of taxes paid by her since July 27, 1922, on the property herein mentioned, should be and is disallowed, and (3) that the aforesaid allowance of $12,176.66 (without interest) should be reduced by the sum of $2,561.84, being the amount (without interest) which Henry S. Wallerstein paid as taxes on the said property, during the period when the said petitioner received income from said property and for which payment the said Wallerstein has been reimbursed from the *corpus* of the fund under the control of the court in these proceedings. Wherefore, the court doth hereby direct the said State-Planters Bank and Trust Company, substituted trustee, to pay to the said Elizabeth Patterson Crutchfield out of the *corpus* of said fund the sum of $9,614.82 (being the difference between the said two sums of $12,176.66 and $2,561.84), with interest from this date until paid, at the rate of six per cent per annum, for which payment said substituted trustee shall receive credit in the settlement of its accounts. And the said sum is authorized to be paid to the said Elizabeth Patterson Crutchfield without prejudice to any other rights or claims which she may have and without in any way affecting her right to file any further claim or claims on account of payment of taxes or any other matter arising *prior to* July 27, 1922, at any time in the future against the *corpus* of her father's estate."

The note for $94,500.00 given by Housing Investment Corporation for its deferred payment bears interest from May 15, 1928, and on August 14, 1928, the trustee received the first quarterly installment of interest thereon, $1,417.50, and on the same day paid to Mrs. Crutchfield $1,313.17 thereof. Yet the court, in its decree, orders the trustee to pay to Mrs. Crutch-

field interest at six per cent on $65,000.00, the amount of the Wallerstein deferred payment note, from May 15th to September 10, 1928, amounting to $1,246.05. Upon what theory this was done by the court it is difficult to understand.

This seems to me to be clearly erroneous on any theory of the case. But in the view which I take of the case, the error of the court goes much further.

It is plain that the effect of the several decrees entered in this cause was to decree that there had been no sale of this property until at the auction sale held on May 15, 1928.. What then sold was *corpus* of the estate, and no part of the purchase price paid by the Housing Investment Corporation can be considered or dealt with as *income* of the estate.

It may be that during the lapse of time from July 27, 1922, to May 15, 1928, the value of this land increased from $75,-000.00 to $126,000.00, plus the $10,979.92 received from the condemnation of a part thereof, but this increase was an increase in the value of a part of the *corpus* of the estate. It was not *income* within the meaning of Dr. Patterson's will.

It is true that Wallerstein had made an ineffectual attempt to purchase this land, and had paid a portion of the purchase price offered by him, six years' interest on the residue of the price offered by him, and the taxes for several years, but these facts cannot, under the decrees in this case, be deemed to have changed the whole, or any part, of this portion of the *corpus* of the trust estate from non-income producing land into income-producing personal property. Where a life tenant receives an offer to purchase land in which he has a life estate, and submits it to the court for confirmation, if the court refuses to confirm the sale, but later sells it in that suit at a better price, the life tenant is not entitled to have the court consider the property *pro tanto* converted into income-bearing property as of the time the offer rejected would have effected such conversion. He is not entitled to have the court pay to him from

the proceeds of the sale interest on the amount of the rejected offer pending the litigation.

The effect of the decrees in this cause is that the portion of the *corpus* of the trust estate here involved remained in kind unproductive real estate until the sale of May 15, 1928, and that the $10,000.00 cash payment made by Wallerstein, the $65,000.00 note executed by him by way of interest on said note are, and always were, the property of Wallerstein, and that he is not only entitled to have them returned to him, but also is entitled to receive from the trustee interest on said $10,-000.00 and the interest payments made by him from their respective dates of payment until repaid to him. Certainly, then, the trust estate cannot be deemed to have received, or been entitled to receive, any income from the Wallerstein cash or notes.

If this be true, no sums have at any time been payable to Mrs. Crutchfield by the trustee for or on account of income derived by the trustee from that portion of the *corpus* of the estate here involved, except such as has accrued since the sale of May 15, 1928, from the proceeds of that sale, for prior to that time it produced no income.

The trustee, acting under a mistaken assumption, has paid to Mrs. Crutchfield during the period August 1, 1922, to September 1, 1928, *as income* of the trust estate the following aggregate items, which were not income of the trust estate: (1) The net income received by it on $6,250.00 (the $10,000.00 cash payment made by Wallerstein, less $3,750.00 paid the Denoons); (2) the sum of $11,659.54 paid by Wallerstein as interest on his $65,000.00 note, less trustee's commission of five per cent and taxes accrued on account of said note and the supposed income therefrom; (3) $2,561.84, which the trustee should have paid for taxes on the real estate here involved, but which were paid by Wallerstein.

Just what the principal amount of these items aggregates is not easily computed from the record here before us, but apparently they exceed $16,000.00.

In addition to this, the trustee has paid to itself five per cent commissions on the first two items of supposed income above mentioned, aggregating over $600.00.

Having received as net income these sums, which cannot in any sense be deemed to have been income of the trust estate, Mrs. Crutchfield now asks that she be paid *as income* from the trust estate an amount equal to six per cent per annum on $65,000.00 from July 27, 1925, to September 10, 1928, amounting to $12,176.66.

The court has ordered this sum, $12,176.66, less $2,561.84 paid by Wallerstein for taxes which should have been paid from the income of the estate, making a net amount of $9,-614.82 paid to Mrs. Crutchfield by the trustee out of the *corpus* of the estate.

Clearly, Mrs. Crutchfield, under the provisions of Dr. Patterson's will giving her the *income* from the trust estate, has not been entitled to receive the aforesaid items aggregating approximately $16,000.00, which have been paid to her by the trustee, nor is she now entitled under such provision to have paid to her the $9,614.82, which the court in the decree here appealed from, orders the trustee to pay her, because there has been no such income received by the trustee from the trust estate. The trial court apparently recognized that this is true, for it specifically orders that the $9,614.82 be paid to her out of the *corpus* of the estate.

If, then, Mrs. Crutchfield be entitled to retain the sums aggregating approximately $16,000.00 paid to her by the trustee, and/or to receive payment of the $9,614.82 now ordered to be paid to her, it can only be because she was and is entitled to have such sums paid to her from the *corpus* of the estate, under the provisions of subdivision "c" of Item III of the will of Dr. Patterson, on the ground that the income of the estate is insufficient to properly maintain and support her. For the only conditions under which the trustee may pay to her any part of

the *corpus* of the estate is that the income is insufficient for this purpose.

As I have heretofore pointed out, neither upon the pleadings nor upon the proof is this record such as to warrant the court in decreeing that the net income from the trust estate (eliminating all income supposed to have been received from the Wallerstein cash and note) has been or is insufficient to properly maintain and support her. Further than this, the discretion to decide whether the income has been or is insufficient for such purpose is vested in the trustee, and not in the court, and the trustee has not, so far as this record discloses, adjudged that the income has been or is insufficient for such purpose, nor has Mrs. Crutchfield so asserted or made any request of the trustee to so decide.

If I understand the opinion of the court correctly, it holds that the trial court erred in decreeing that Mrs. Crutchfield should pay to Meredith & Meredith, her attorneys, a fee of $2,000.00 for legal services rendered to her by them in this suit, because "there is no pleading in this cause properly raising any question between the parties (*i. e.,* Meredith & Meredith and Mrs. Crutchfield as to the fee to be paid by her to them), and, therefore, the court exceeded its authority when it entered judgment against Mrs. Crutchfield." This, I think, is correct.

But neither in the pleadings nor in the proof is the right of Mrs. Crutchfield to have the trustee pay her any portion of the *corpus* of the trust estate put in issue, and it seems to me that the principal applied to the judgment against Mrs. Crutchfield for attorney's fee is also applicable to the decree in favor of Mrs. Crutchfield directing the trustee to pay to her a portion of the *corpus* of the estate. In the latter instance the decree of the court has gone outside the issues raised in the record, just as it did in ordering Mrs. Crutchfield to pay her attorneys a fee of $2,000.00.

For these reasons I am of opinion that the court should have ordered Mrs. Crutchfield to repay to the trustee all sums paid

to her from the income derived from the Wallerstein cash payment and from the interest payments made by Wallerstein, with interest thereon at six per cent per annum from the dates of payment thereof to her, and also the amount of taxes, with interest thereon, which the court has ordered the trustee to repay to Wallerstein, and should not have ordered the trustee to pay to her the item of $9,614.82, which in the decree here appealed from it has ordered paid to her.

The commissions deducted by the trustee upon the principal of the amount of the supposed sale to Wallerstein, it would appear, the court has treated as the amount that the trustee was entitled to for acting as special commissioner to sell the property at public auction; but the trustee should not be permitted to retain the commissions which it has paid to itself on the *income* received on the Wallerstein cash and note, and should be required to apply it on the sums ordered repaid to Wallerstein.

The questions, whether the trustee now had the authority to pay to Mrs. Crutchfield from the *corpus* of the estate any sums because it may be of opinion that in the past the income of the trust estate has been insufficient to properly maintain and support her, and whether the income is insufficient for her present and future proper maintenance and support, I think cannot be properly decided upon this record, as these questions have not been put in issue either by the pleadings or the proof.